12  545
d15   23
31*  550
37*  898

BLOCK ET AL., RESPONDENTS, *v.* MURRAY ET AL., AP-
PELLANTS.

[Argued May 9, 1892.  Decided November 28, 1892.]

MECHANIC'S LIENS — *Contracts* — *Labor done by lessee of mining claim.* — The effect
of a contract whereby the owners of a mining claim grant possession of it to
another, with the privilege to purchase at a fixed price, within a limited period,
and also to extract ores within such period, with conditions as to the manner
of working the mine, which is to be done at the grantee's expense, reserving to
the grantors a certain per cent of the net profits from the ores extracted, to be
applied on the purchase, if that option be exercised, no payments being made
by the owners to the grantee, and with no obligation on the part of the grantee
to do the work proposed, beyond a forfeiture of his rights thereunder, is to make
such occupant, prior to exercising his option to purchase a mere tenant or
lessee, and, therefore, the interests of the owners are not subject to a lien for
labor and materials procured by such tenant in his operations on the mine, as
under the mechanic's lien law the interests of owners are not chargeable with
liens for labor performed for the benefit of lessees. (*Pelton* v. *Minah Con.
Min. Co.* 11 Mont. 281, followed.)

SAME — *Same* — *Same*. — The fact that such contract contained a clause requiring
a shaft to be sunk to a certain depth and timbered in a designated manner, does
not make the occupant of the mine a contractor with the owners to do certain
improvement work on the mine, where the occupant was not bound to sink the
shaft except that a failure to do so worked a forfeiture of his right of possession
and purchase.

*Appeal from Third Judicial District, Jefferson County.*

Action to foreclose mechanic's liens against mining premises.
Judgment was rendered for plaintiffs below by GALBRAITH, J.
Reversed.

*Cowan & Parker, E. H. Goodman,* and *J. E. Kanouse,* for
Appellants.

*C. H. Baldwin,* and *Thomas Joyes,* for Respondents.

HARWOOD, J. — The question for determination in this case
is whether or not, upon the facts found, plaintiffs are entitled to
liens upon a certain quartz lode mining claim known as the
"Iron Mask Lode," situate in Jefferson County, Montana, to
secure payment for labor performed on said mine, and for timber
furnished by one of them, and used thereon, at the instance and
request of one I. N. Knight.  It appears that appellants, being
the owners of the mining claim in question, on December 30,
1890, entered into a contract in writing with said Knight,
whereby said owners bound themselves, their heirs and legal

representatives, unto him in the sum of forty thousand dollars, conditioned that they would, at any time on or before December 31, 1891, make, execute, and deliver to Knight a good and sufficient deed, conveying to him said property, free from all encumbrance, upon his payment to said owners of the sum of forty thousand dollars, lawful money of the United States, as purchase price for said property. And, after stipulating the above obligations and conditions, the instrument further provides, in substance, as follows: (1) That Knight "shall have full possession, right of possession, and control of the said Iron Mask Mining Claim until the expiration of this bond, either by forfeiture or limitation;" that during such time, however, all the parties thereto "shall have the right and privilege at all times during working hours to examine the workings of said mine, and test the quality of ore extracted." (2) That said Knight shall "sink, or cause to be sunk, in a good and workmanlike manner, the present discovery shaft of said lode, to a depth of three hundred and fifty feet from the surface, thirty feet of which shaft (in addition to the fifty feet, more or less, now sunk) shall be completed during the month of January, 1891, and thirty feet additional during each and every month thereafter until the full depth of three hundred and fifty feet is attained. Said shaft is to be perpendicular in its course downward from the present discovery shaft, and timbered in a good and workmanlike manner, with square sets, not less than ten inches in diameter at the small end before trimming." (3) That said Knight "is to have the privilege and right of extracting ore, running levels, stoping from and upon any portion of said mine, so long as the work is done in a substantial and workmanlike manner." (4) That said Knight "is to carefully extract, take out, sort, and sack all ores which he may find in said shaft, or any other portion of said mine, at his own cost and expense, and is to at all times keep the mine free from all liens or claims for labor or other expense." (5) That the net profits of all ores extracted and shipped from said mine, after deducting expenses of shipping and smelting, are to be divided as follows: Eighty per cent to be retained by the party of the second part (Knight), and twenty per cent to be deposited immediately upon the returns in the Bank of Townsend to the credit

of the parties of the first part (the owners of the mine): provided, however, in case said second party purchase said mine under and by virtue of this bond, then the amount deposited as aforesaid to the credit of the said first parties to be and become a part of the purchase price of said mine, otherwise to remain the property of the said first parties; the certificate of returns to be deposited in said bank, and retained subject to the inspection of all or any parties interested." (6) That said Knight "is to have the use of all tools, whim, etc., now upon the mine." (7) "That all improvements which may be by the second party (Knight), or by any one in his behalf, put upon said mine, shall become and remain a part and parcel of this mine itself, or pass with the mine if sold, or remain upon the mine, and become the property of the said first parties, if the mine is not sold." (8) "That a violation of any one of the above agreements shall be considered a violation of all, and shall work a forfeiture of this bond, and shall entitle the first parties (the owners) to enter upon and take and retain possession of said lode. Then this obligation to be void, otherwise to remain in full force and virtue."

The foregoing are all the conditions of the instrument under which said Knight went into and occupied possession of said mining claim, and the findings show that all labor and materials for which respondents claim liens were employed by said Knight, and furnished to him in and about his operations on said mine, under said instrument, and that appellants, the owners of said mine, had no part in causing said labor to be employed, or material furnished, further than having entered into the arrangement evidenced by said instrument.

The lien claimants contend that Knight occupied said mine as a contractor, to make improvements thereon, for the benefit of the owners of said property. The owners contend, on the other hand, that Knight was merely a tenant of said mining claim for the period limited by said instrument, with privilege to work the mine as lessee, at his own expense, and return a portion of the proceeds, if any; and that, therefore, their interests are not chargeable with liens for labor performed or materials furnished at his instance, and used by him in his operations on said mining claim. The legislature undoubtedly intended, as

manifested by the statute, to apply a lien against the interests of the owners, as far as could be justly permitted, to secure payment for labor and materials employed on property mentioned in the statute. It is equally apparent, also, from the provisions of the statute, that the legislature, in its wisdom, intended to withhold from the operation of such liens the interests of owners where the property was occupied by lessee or tenant or person who "owned less than a fee-simple estate in said lands," and the labor or materials for which lien is sought were employed by and furnished to such tenant or lessee in and about his operations upon the property. The statute relating to the subject provides "that the lien given by section 820 of this chapter shall extend to the lot or land upon which any such building, improvement, or structure is situate, . . . . if the land belongs to the person who caused said building to be constructed, altered, or repaired; but, if such person own less than a fee-simple estate in such land, then only his interest therein is subject to such lien." And further provides that "every person, including guardians, minors, married women, and any company, association, or corporation, not tenants or lessees, for whose use, benefit, or enjoyment any building, structure, or improvement mentioned in section 1 of this act shall be constructed, repaired, or altered, shall be deemed the owner or proprietor thereof for the purposes of this act." Sections 3 and 5 of "an act," etc., "to amend 'an act relating to mechanic's liens,'" approved March 9, 1887 (page 71, Extra Sess. 1887).

The question then arises, in what relation did Knight occupy and prosecute his operations upon said mining claim under the provisions of said instrument? The answer must be arrived at by a consideration of the terms of said instrument. The question involved may be stated in the following proposition: If the owner grants to another possession of a mining claim for a limited period, with privilege to purchase at a fixed price at any time within the period, and also with privilege to mine and extract ores, without limit, during the period, providing, however, some conditions as to sinking shafts, running levels, the manner of timbering, and the like, all to be done entirely at the expense of the grantee, reserving to the grantor a certain per cent of the net profits derived from ore extracted,

to be applied on the purchase, if that option is exercised, otherwise to be retained by the owner, with no payment whatever from the owner to the party taking possession under those conditions, and no obligation on the part of the grantee to do the work proposed, except that failure to proceed according to the contract forfeits his rights thereunder, does the granting of possession under these conditions subject the owner's interests to a lien for labor and materials procured by such tenant, and used in and about his operations on the mine? The provision of the statute undoubtedly answers this proposition in the negative, for it is seen that the conditions stated make the occupant of a mine thereunder, prior to his exercising his option to purchase, a mere tenant or lessee. (*Pelton* v. *Minah Con. Min. Co.* 11 Mont. 281.)

Counsel for respondent suggest that the clause of the contract in question requiring a shaft to be sunk to a certain depth, and timbered as designated, makes Knight a contractor with the owners to do certain improvement work on the mine. It is observed that Knight was not bound to sink said shaft, except that failure to carry out the provisions of the contract worked a forfeiture of his right of possession, and other rights thereunder. Nor was there any consideration whatever to be paid to Knight by the owners for his operations on the mine. The law allows a lessor to impose conditions as to the manner in which the leased premises shall be used and worked, and we would not be justified in holding that, because the owners provided in a measure such conditions, therefore the interests of the owners became subject to a lien for labor and materials procured by the lessee in his operations on the mine in question, while the statute excepts such interests from such lien.

We are unable to find any condition in the instrument in question here upon which it can be held to be a contract by the owners to obtain improvements on said mining property at the expense of the owners, or under such circumstances as that the interests of the owners can be held for the labor and materials procured by Knight. Prior to exercising the option to purchase, the owners stood in the relation of lessors and Knight in the relation of lessee of said mine, and under the provisions of the statute the courts are forbidden to apply a

lien against the owners' interests for labor and material pro-
cured by and furnished to the lessee in and about his operations
on the leased premises, unless the owners became a party thereto
by some additional act, understanding, or arrangement, over
and above the mere granting of possession of the premises to
another, under conditions that the latter will occupy the same
for certain purposes, and under certain privileges, entirely at
his own expense, and return to the owners a certain per cent
of the profits accruing to the lessee.

Counsel for respondents suggest that evasion of the lien law
might be accomplished by those desiring improvements on their
property entering into a contract in the nature of a lease with
one who was in fact a contractor to do improvement work, for
which a lien would lie if the real relations were made to appear.
Nearly all human affairs may be made the subject of fraud, but
for that reason courts are not justified in anticipating fraud,
and refusing to apply the statutes to the conditions within its
terms, where such conditions are shown, and no fraud is shown,
or even intimated, as to the transaction in question. It is not
pretended that there was any deception practiced. For aught
that appears in this case, all parties furnishing labor or mate-
rials knew the conditions under which Knight was in the pos-
session of and operating upon said mine, or could have known
the same by inquiry.

The case of *Woodward* v. *Lieby*, 36 Pa. St. 437, is relied on
by counsel for respondents. In that case the contract provides
for the erection of a warehouse on the leased premises, at a cost
greatly in excess of the value of the rent. In addition to the
use of the premises, the owners agreed to pay the lessee fifteen
hundred dollars for the erection of the warehouse, being one
half of the estimated cost thereof. A lien was sought to be
applied against the owner's interest to secure the payment of
forty-five dollars. In passing upon the case, the court, per
Lowrie, C. J., said: "In one aspect, this is a lease for years,
for a rent payable in improvements; and in another it is a con-
tract for the erection of a warehouse for a consideration, pay-
able partly in money and partly out of the profits of the land.
We do not get a complete view of the relation established with-
out looking at it in both these aspects; and very evidently the

latter aspect presents its predominant characteristics, for on several contingencies the lease was to terminate, and the parties were to settle as on a mere contract for building, charging rent up to the time of such termination; and, in any event, half the cost of the building was to be paid in money. We think it ought to be regarded as a building contract, rather than as a lease, when we are seeking the secondary rights of the mechanics who do the work. In so doing, we do not confound building contracts, payable in rents, with improvement leases, though we do not anticipate experience by any theoretical definition of their exact differences."

It is plain that the conditions involved in that case are not at all similar to the one at bar, and therefore the conclusions are not applicable. In the case at bar the owners did not even agree to put in their share of the proceeds from the mine — the stipulated part of profits going to them — towards paying the expenses of sinking the shaft or working the mine. Nor did they agree to pay half or any proportion of the cost thereof, "in any event," in money, outside of the rent. Nor did the owners agree to settle with the lessee, on certain terms, for improvements, in case he failed to fully carry out the terms of occupancy and improvement.

It is ordered that judgment of the court below be reversed, and the cause remanded, with directions to enter judgment in favor of appellants according to the conclusions herein set forth.

*Reversed.*

BLAKE, C. J., and DE WITT, J., concur.