MORRIS v. MARSH et al.

(Second Division. Nome. November 10, 1906.)

No. 1,488.

1. MINES AND MINERALS (§ 112*)—WORKING PLACER MINE—MECHANICS' LIENS.

The owner of a placer mining claim leased it to M. & Sons, who employed laborers to work the mine. The latter were not paid, and filed mechanics' liens. *Held*, that a lessee of a mine

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

who employs laborers to work therein is not such an agent for the owner as to bind his interest by laborers' liens. The general rule is that a lessee cannot impose any charge upon the reversion or estate of the lessor.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 233–235; Dec. Dig. § 112.*]

2. MINES AND MINERALS (§ 112*)—MECHANICS' LIENS—WORKING PLACER MINE.

Where laborers are engaged in extracting gold from a placer mining claim, their labor tends to depreciate the value of the mine, and they do not come within the benefits of the mechanic's lien law. Their labor has a tendency to detract from the value of the claim, instead of being a benefit thereto.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 233–235; Dec. Dig. § 112.*]

3. MINES AND MINERALS (§ 117*)—MECHANICS' LIENS—FORECLOSURE —PLEADING.

A complaint in foreclosure of a laborer's lien on a mining claim must affirmatively show that the labor went to the improvement of the mine, or it is fatally defective on demurrer.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 117.*]

Demurrer to the complaint, by D. W. McKay, one of the defendants, based on the one ground that it does not state facts sufficient to constitute a cause of action. The action is to foreclose three claims for mechanics' or laborers' liens on a mining claim or mine designated as "No. 9 above discovery on Big Hurray creek," a tributary of Solomon river, in the Cape Nome mining and recording district, Alaska. The plaintiff acquired his right to sue by virtue of an assignment of the claims of three several laborers upon said mining claim.

The labor was performed under contracts of employment with Marsh & Sons, the demurrant's codefendants. The complaint describes the defendant McKay as the reputed owner of the above-mentioned mining claim, while the claims of lien

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

made a part of the complaint refer to him as both owner and reputed owner.

The complaint designates Marsh & Sons, the codefendants of McKay, as "the owners of a certain lease from the defendant McKay for the working of said mine," and alleges that "they were in possession and working the said mining claim under said lease" during the performance of the labor by the claimants. The terms of the lease are not recited in the complaint. The action proceeds under the provisions of Civ. Code Alaska, §§ 262 to 275, inclusive.

S. T. Jeffreys, for plaintiff.

A. J. Bruner and J. A. Bruner, for defendant McKay.

MOORE, District Judge. The class of laborers who are given the right of lien by section 262 of the statute are enumerated therein as—

"mechanics, artisans, machinists, builders, laborers, teamsters, draymen and other persons performing labor upon * * * the construction, development, alteration or repair either in whole or in part of any building, wharf, bridge, flume, mine, tunnel, fence, machinery, or aqueduct, or any structure or superstructure."

The section further declares that every person of these classes—

"shall have a lien upon the same for the work or labor done or material furnished at the instance of the owner of the building or other improvement or his agent."

It appearing in the complaint that the laborers named in the complaint were employed by Marsh & Sons, who are described as owners of a lease from D. W. McKay, the owner of the mining claim, the question arises as to their right and power to subject the mining claim to liens for the indebtedness of said Marsh & Sons under the authority of the statute.

That their contract with the laborers would have the legal effect under the statute to bind the lessees' own interest, such

as it may be, in the claim or mine, is beyond question, if the work done was upon "a building or other improvement" to the mine. Assuming that their work was upon an improvement to the mine, the plain language of section 263 would confer upon them the undoubted right to the lien upon the interest of Marsh & Sons.

The question for consideration, however, is whether their contract of employment operated to bind the owner's estate in the land by a statutory lien. If upon the basis of the facts alleged in the complaint the lessees had the power to subject the claim by their contract to the lien provided by the statute, it manifestly must be because of their standing in the relation of agents toward McKay under the conditions defined by the statute. Were they, then, agents of McKay by construction of law?

It is established law that a lessee, contracting for improvements upon the demised premises, does not, merely by virtue of his relation as lessee, contract as the agent of the lessor, so as to subject the property to mechanics' liens therefor. Wilkins v. Abell, 26 Colo. 462, 58 Pac. 612; Waterman v. Stout, 38 Neb. 396, 56 N. W. 987. Section 262, above quoted, in substance declares that the right to the lien provided by the statute shall accrue to any one who does work upon any structure or improvement at the instance of the owner of the building or his agent. It next defines the agent who shall be capable of charging an improvement and the land supporting it with a lien, and in the class of such agents arrays "every contractor, subcontractor, architect, builder, or other person having charge of the construction, alteration or repair, in whole or in part, of any building or other improvement," and directs that any one of the class "shall be held to be the agent of the owner for the purpose of this Code."

By an easy, liberal construction of this section, a court might decide that the lessees or owners of the lease described

in the complaint were invested with ample power to impose the lien created by the statute upon any improvement, alteration, or repair constructed under their charge or direction, and by it bind the owner's estate therein. But the law enjoins on courts in construing this part of the statute a more rigid rule. The safe and proper rule of construction of mechanic's lien statutes is that, while the remedial portions of these statutes should be liberally construed, with a view to avoid defeating the purpose of the statute, yet those parts upon which the right to the existence of a lien depend, being in derogation of the common law, should be strictly construed. Am. & Eng. Ency. of Law (2d Ed.) vol. 20, p. 278, and authorities cited in note 3 thereunder. Applying the rule of strict construction to this section of the statute, the meaning properly attaching to the word "contractor" as used in the section is one who has charge of the construction of the building, alteration, or repair by direction of or contract with the owner or his agent duly authorized to contract for him; so an architect or other person "having charge of the construction" must receive his employment from the owner directly, or indirectly from his agent duly authorized.

The authority, if there be any, in the owners of the lease to bind the owner's interest in the manner aforesaid, must be traced to three statements in the complaint: First, that Marsh & Sons were the owners of a lease of the mine while the work was performed; second, that they employed the lien claimants to do the work; third, that McKay had knowledge of the contract of employment and consented to the terms thereof as the owner and lessor of said mining claim. I have already shown that, assuming all the facts embodied in the first two propositions above to be true, no authority could be derived from them to subject the lessor's interest to a lien by virtue of the statute.

As to the third allegation, the general rule is that a lessee

cannot impose any charge upon the reversion or estate of the lessor thereof. Santa Monica Lumber Co. v. Hege, 119 Cal. 376, 51 Pac. 555; Wilkins v. Abell, 26 Colo. 462, 58 Pac. 612; Block v. Murray, 12 Mont. 545, 31 Pac. 550; Stetson-Post Mill Co. v. Brown, 21 Wash. 619, 59 Pac. 507, s. c. 75 Am. St. Rep. 862; Alfree Mfg. Co. v. Henry, 96 Wis. 327, 71 N. W. 370. Nor does the fact that the lessor acquiesces in the improvement by the lessee subject his reversion to the mechanics' liens therefor. Williams v. Vanderbilt, 145 Ill. 238, 34 N. E. 476, 21 L. R. A. 489, 36 Am. St. Rep. 486; Francis v. Sayles, 101 Mass. 435; Havens v. West Side Electric Light Co., 17 N. Y. Supp. 580. The third foregoing allegation of the complaint was evidently framed with a view to complying with the requirements of section 265, which is as follows:

"Every building or other improvement mentioned in section 262 constructed upon any lands with the knowledge of the owner or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein."

The allegation of the complaint fails to meet this requirement in that it does not impute knowledge of the construction of any building or improvement upon McKay's lands. Knowledge of the contract of employment and consent to its terms is not tantamount to knowledge of the actual construction of the improvement, even though the terms of the agreement, as we may surmise, may have contemplated its construction. To support the complaint the counsel for the plaintiff in his brief relies almost solely on the case of Higgins et al. v. Carlotta Gold Mining Co., 148 Cal. 700, 84 Pac. 758, 113 Am. St. Rep. 344, decided by the Supreme Court of California. The statute construed by the court in that decision is a much broader statute than the one now under consideration. By unmistakable language it allows a lien

3 A.R.—10

for work done in the construction of buildings or excava-
tions on land, which are made in the way of an improvement,
to enhance its value, or to make it more useful or available
for a new use. Another provision gives a lien for work done
in or upon mines, which may result either in the construc-
tion of an improvement thereto, or in the partial or total
destruction thereof by the extraction of the ore.

The third provision enumerates those who shall be deemed
to be agents within the meaning and purpose of the statute.
It adds to the category of those who, as in the Alaska stat-
ute, shall be held to be agents, the general class comprehend-
ed by the cause "or other person having charge of any min-
ing," thus lengthening the list of those who shall be treat-
ed as agents in construing the Alaska statute. The Califor-
nia law being so widely different from the Alaska statute,
it has received a construction by the California courts of
which the last-named statute is not susceptible. Because of
these several points of difference in the terms of the two laws
I now decide without hesitation that the case of Higgins v.
Carlotta Gold Mining Co. is not a precedent which should
now govern this court in construing the home statute.

Another defect apparent in the complaint is its omission to
state that the labor mentioned therein contributed to the im-
provement of the mining claim or mine. The frequent re-
currence of the words "building or other improvement" in
the first five sections of the statute makes it clear to the
point of certainty that the Legislature intended to confer the
right of lien upon every laborer or mechanic whose work
tends to improve lands or mines. So obvious is this intent
that the absence of an allegation that the labor went to the
improvement of the owner's lands or mines is of itself fatal
to the complaint. Without an allegation of that nature a
cause of action is not presented by the pleadings; for it may
be that the work had the tendency to detract from the value

of the mining claim. If the fact be that the laborers were engaged in extracting the gold from the claim, their labor probably depreciated the value of the mine; and, if so, they did not come within the benefits of the statute.

Believing that the demurrer stands on firm ground both of law and reason, the demurrer will be sustained.