### M. D. L. McCollum, Appellant, v. James A. Riale, Owner, and W. H. Messenger, Contractor.

*Mechanic's lien—Subcontractor—Secret agreement against liens.*

Where the record owner of land secretly sells and conveys it to another, and verbally agrees with his vendee to build for him a house on the lot, and " not to allow any lumberman's or mechanic's lien to be entered against it," a material man, who, without knowledge of the sale, conveyance or agreement, furnishes material, is entitled to file a lien against the property : Schroeder v. Galland, 134 Pa. 277, distinguished.

Argued March 13, 1894. Appeal, No. 69, Jan. T., 1894, by plaintiff, from judgment of C. P. Lycoming Co., June T., 1890, No. 339, on verdict for defendants. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Reversed.

Sci. fa. sur mechanic's lien. Before SAVIDGE, P. J., specially presiding.

At the trial it appeared that in August, 1889, W. H. Messenger, the record owner of a lot of land in Williamsport, by a verbal contract, sold a portion of the land to James A. Riale for the sum of seven hundred and fifty dollars. The agreement was reduced to writing on Sept. 26, 1889, and on Oct. 5, 1889, Messenger and wife executed and delivered to Riale a ·deed for the lot sold. Soon after the purchase of the lot from Messenger by Riale, Messenger, who was a contractor and builder, entered into a verbal agreement with Riale, by which he was to erect a house on the lot which he had sold, furnish all the materials, do all the work and deliver the same and "not to allow any lumberman's or mechanic's lien," for the consideration of $1,200. On Sept. 23, 1889, Riale reduced this verbal agreement to writing, read it to Messenger, who assented to the same; it was then typewritten and signed by Messenger and Riale on Sept. 26, 1889. On Aug. 30, 1889, Messenger began the erection of the house. Plaintiff received the order for the materials for which he filed the lien, on Sept. 20, 1889, and they were delivered on the ground on Sept. 24, 1889. Plaintiff testified that at the time the materials were ordered, Messenger told him that he owned the lot upon which the building was being ·erected. Plaintiff averred that he had no notice of any of the transactions between Messenger and Riale, until about Oct. 15, 1889, when Riale told him that he was the owner of the house and lot at the time the last door frame was ordered.

The court charged in part as follows:

" At or about the time, perhaps shortly after, the verbal agreement was made by which this lot was sold to Mr. Riale, there was an agreement entered into between them, also verbal, whereby Mr. Messenger was to construct for Mr. Riale, upon this lot, a house for the contract price of $1,200. [It is ·contended by the defendants that, at the time, it was a part of the verbal agreement which was had between them for the construction of this house, that no liens were to be permitted to be filed against the property, but that Mr. Messenger was to turn it over complete and finished to Mr. Riale, for the contract price, free and clear of all incumbrances and liens. The plaintiff contends that there was no such understanding, no such agreement, no such stipulation made when the contract for building this house was entered into. That, gentlemen, is

for you to determine. It is a question of fact with which the court has nothing to do. . . . Of course, a stipulation of that kind, as has been decided by the Supreme Court, must be either an express agreement or the words used must be such as necessarily imply that no liens were to follow. The mere agreement or understanding between the parties that Messenger was to pay for all materials and work and labor would not be an express agreement that there were to be no liens; nor would they be such words as would necessarily imply a stipulation of no liens, or that no liens were to be allowed to be filed against the property. Where there is an entire contract for the building of a house, it is a part of the contract, of course, and is understood that the contractor pays for the material, work and labor that goes into the building; otherwise he would not be able to turn over the property complete to the owner, and it is no express stipulation, as I have just stated, that the building should be turned over free from all liens. Such a stipulation is not implied by the mere use of such words as ' The contractor is to pay for the labor and material that go into the building.' But the stipulation must be express that there are no liens to be filed against the building or else the words used must be such as necessarily imply an understanding between the parties that no liens are to be filed. The minds of the parties must come together by a clear understanding on that question as to whether the building is to be turned over free and clear of liens or not. You determine that question and ascertain how this parol or verbal contract was.] [1] . . . .

" [If the circumstances are such that the contractor himself could not recover, then the material man who recovers through him, and whose rights rise no higher than his, whose equities and rights are dependent upon the contract he has with the owner—if the contractor himself cannot recover, then the material man cannot recover.] [2]

" [A great deal has been said in this case about the possession. I will simply say to you that in my judgment if these dealings between Messenger and Riale were bona fide and honest, if there was no fraud connected with them, and whether there was or not you must determine from all the circumstances of the case.—There does not appear to my mind to be anything to indicate that there was any fraudulent intent upon

the part of Mr. Riale, but I leave it to you to determine whether there was or not.   If the transaction was honest and bona fide, and there was no fraud in the transaction, then I say to you that when Mr. Messenger went upon that lot, after having agreed to sell it, by verbal contract, to Mr. Riale ; when he went upon that lot and began the construction of a building for Mr. Riale, under his verbal agreement with him to build for a stipulated sum, he went there as the contractor for Mr. Riale, and his possession as contractor became the possession of Mr. Riale.   In short, if he agreed and stipulated to turn the building over free from all mechanics' liens, and guaranteed that no mechanic's lien should be filed against it, if he did that, then he could not file any mechanics' liens against this building, and if he could not, neither could the material man who must work out his rights and equities through Messenger.] [3]

" [So you see, very much depends upon what this verbal agreement was, as to whether there was a stipulation against liens.   If there was not, as the plaintiff contends, then Mr. McCollum ought to recover anything that was due him at the time of the filing of the mechanic's lien on account of the frames furnished.   If there was such a stipulation, then he cannot recover for any articles unless it be for the transom door frame furnished on the 15th of October.

" I think you must understand what I mean to leave to you pretty clearly in this connection. , Now then, if you find that no such stipulation was made by the verbal agreement, then Mr. McCollum would recover for any balance that was due him on account of the frames furnished.   If you find that there was such a stipulation, then he could not recover for any but the transom door frame,] [4] and whether he could recover for that or not would depend upon whether it had been ordered by Mr. Messenger or whether ordered by Mr. Riale, on his own account.   If it was ordered by Mr. Riale on his own account, and the order was after the legal title had been conveyed to Mr. Riale, he would undoubtedly be liable therefor."

Verdict and judgment for defendants.   Plaintiff appealed.

*Errors assigned* were (1–4) instructions, quoting them.

*W. M. Stephens*, for appellant, cited : McElroy v. Braden, 152

Pa. 78; Nice v. Walker, 153 Pa. 123; Iron Works v. O'Brien, 156 Pa. 172; Act of June 16, 1836, P. L. 696; Lyon v. McGuffey, 4 Pa. 126; Weaver v. Sheeler, 124 Pa. 473; Prutzman v. Bushong, 82 Pa. 526; Act of May 21, 1861, P. L. 550.

*H. T. Ames, T. H. Hammond* with him, for appellee, cited: McElroy v. Braden, 152 Pa. 78; Nice v. Walker, 153 Pa. 123; Iron Works v. O'Brien, 156 Pa. 172; Act of April 28, 1840, § 24, P. L. 474; Harlan v. Rand, 27 Pa. 511; Long v. Black, 5 Pa. C. C. R. 258; Savoy v. Jones, 2 Rawle, 343; Holdship v. Abercrombie, 9 Watts, 52; Lyon v. McGuffey, 4 Pa. 126; Weaver v. Sheeler, 124 Pa. 473; Fullmer v. Poust, 155 Pa. 275; Campbell and Pharo's Appeal, 36 Pa. 247; Kitson v. Crump, 9 Phila. 41; Bruner v. Sheik, 9 W. & S. 119; Finley's Ap., 67 Pa. 453; Woodward v. Wilson, 68 Pa. 208; Reed's Ap., 13 Pa. 475; Cover v. Black, 1 Pa. 493; Moyer v. Shick, 3 Pa. 242; Morris v. Zeigler, 71 Pa. 450; Sill v. Swackhammer, 103 Pa. 7; Landell's Ap., 105 Pa. 152; Norris's Ap., 30 Pa. 122; McCay's Ap., 37 Pa. 125; Hahn's Ap., 39 Pa. 409; Reed's Ap., 13 Pa. 475; Schroeder v. Galland, 134 Pa. 277; Benedict v. Hood, 134 Pa. 289; Dersheimer v. Maloney, 143 Pa. 532; Tebay v. Kirkpatrick, 146 Pa. 120.

OPINION BY MR. JUSTICE McCOLLUM, Oct. 1, 1894:

Four fifths of the materials for which this claim was filed were furnished on the order of Messenger while he was the apparent owner of the lot, and all of them except the transom door frames were furnished before the material man was informed that Riale had any legal or equitable title to or interest in it. All the appearances were in accord with Messenger's representations, when he ordered the materials, that they were for a house he was building on his lot on Park avenue. His deed for the lot was on record, and there was no visible change in his possession of it. There was absolutely nothing discernible anywhere to suggest or in the remotest degree indicate any change in his relations to the property or that in erecting a house upon it he was the representative or agent of another. In short, the record, the appearances and Messenger's representations to the appellant united in presenting the case of an owner of a lot ordering the materials for and erecting a house

upon it.   But it is urged that the appellant is not entitled to a lien for his claim because (1) in August, 1889, Messenger verbally agreed with Riale to sell the lot to him, and that in pursuance of this agreement a deed of it was made and delivered to the latter on the 5th of October following; and (2) that soon after the agreement to sell the lot he verbally agreed with his vendee to build for him a house upon it, and " not to allow any lumberman's or mechanic's lien to be entered against it."   The agreement in respect to the erection of the house was not reduced to writing and signed until September 26, 1889, or six days after the materials were ordered, nor was anything paid on the lot until that time.

The appellant, whilst conceding the principles enforced in Schroeder v. Galland, 134 Pa. 277, and kindred cases, contends that upon the facts above recited he is entitled to a lien upon the building for materials furnished and used in its construction.   In considering this contention it must be remembered that when Messenger ordered the materials for the house he was the owner of the lot and his title to it was shown by the record.   Riale had then no enforcible equity or claim in or upon the lot because the verbal agreement gave him none, and he had done nothing in pursuance of it which prevented his vendor from successfully repudiating it.   Messenger's possession of the lot when he commenced the erection of a house upon it was in accord with his title and so were his representations that the materials he ordered were for a house he was building on his lot on Park avenue.   What was there in the circumstances surrounding the transaction, to suggest to the material man the existence of an equitable interest or title in Riale or any one else, or to put upon him the duty of further inquiry?   Absolutely nothing.   The case before us is therefore wholly unlike the cases relied on by the appellees in which it is held that a sub-contractor is bound by a stipulation against liens in the contract between the owner and the principal contractor.   In none of them is it held or suggested that a secret verbal agreement, such as is interposed here, will prevent or defeat a lien.   They were cases in which the labor was done or the materials were furnished on the order of or under a contract with the principal contractor who was known as such, not, as in this case, on the order of or under a contract with

the apparent owner.   In them the sub-contractor was charge-able with knowledge of the contract between the owner and the principal contractor, because he had an opportunity and it was his duty to ascertain its terms before performing labor or furnishing materials on the credit of the building.   In this case no such opportunity was presented or duty imposed.   It is in accordance with equity that the sub-contractor should be bound by the terms of the contract between the principal contractor and the owner, in the former case, and against it to hold him bound by the terms of the secret agreement relied on in this case to defeat the claim of the appellant.   We hold therefore that the appellant is entitled to a lien for the materials fur-nished before he knew or ought to have known that such agree-ment existed.

To the extent that the rulings of the learned court below are in conflict with this opinion the specifications of error are sus-tained.

Judgment reversed and venire facias de novo awarded.