(November 26, 1895.)

## STEEL v. ARGENTINE MINING COMPANY.
### [42 Pac. 585.]

MECHANIC'S LIEN—WHEN NOT ENFORCEABLE—OPTION TO PURCHASE.—
Where, in an action to foreclose mechanic's lien, it conclusively appears from the record that credit was given to the party in possession of the property under an option to purchase, and not to the owner of the property, such liens will not, in the failure of the party in possession, and to whom credit was given, to fulfill his contract, and avail himself of the option, be enforceable against the owner or his property.

SAME—DEFECTIVE NOTICE OF LIEN.—A statement in the notice of lien that the materials furnished, or the work and labor performed, were so furnished and done and performed upon a certain mining claim, "the property of the defendant," is not a sufficient compliance with the provisions of section 5130 of the Revised Statutes of Idaho.

(Syllabus by the court.)

APPEAL from District Court, Shoshone County.

C. W. Beale, for Appellant.

This suit having been commenced in August, 1892, the provisions of title 4, sections 5125 to 5139, inclusive, of the Revised Statutes, constitute the law, then in force, applicable to the case at bar. To entitle Receiver Steel to enforce a lien against the property of the defendant company for material furnished, he must not only allege and prove that the machinery and materials were used in the construction, alteration or repair of said claim, but that they were by the express terms of his contract with the Argentine Mining Company, furnished to be used in that manner thereon. (Rev. Stats., sec. 5125; *Bottomly v. Rector etc. of Grace Church,* 2 Cal. 90; *Houghton v. Blake,* 5 Cal. 240; *Holmes v. Richet,* 56 Cal. 307, 38 Am. Rep. 54; *Hunter v. Blanchard,* 18 Ill. 318, 68 Am. Dec. 547; *Roebling Sons Co. v. Bear Valley Irr. Co.,* 99 Cal. 488, 34 Pac. 80.) Notice of mechanic's lien which does not state unequivocally and plainly the terms, time given and conditions of the contract under which the materials are furnished, is fatally defective. (*White v. Mullins,* 3 Idaho, 434, 31 Pac. 801; *Hooper v. Flood,* 54 Cal. 218.) One in possession under a verbal or written contract of purchase cannot subject to a mechanic's lien either the building or the land, to the prejudice of the legal owner, even where the statute contemplates a remedy against either the land or the building. (*Worden v. Hammond,* 37 Cal. 61; *Wager v. Brisco,* 38 Mich. 587; *Wilkins v. Litchfield,* 69 Iowa, 465, 29 N. W. 447; *Dierks v. Walrod,* 66 Iowa, 354, 23 N. W. 751; *People's etc. Assn. v. Spears,* 115 Ind. 297, 17 N. E. 570; Jones on Liens, sec. 1247.)

W. W. Woods and Richardson & Williams, for Respondents.

If the complaint should be held to be defective in not stating that the materials were furnished to be used in the mine, we contend that such defect is cured by the introduction without objection on the part of the defendant of competent testimony on that subject. In support of our right to supply such a defect and to have the complaint considered as amended by the appellate court

we cite the following authorities: 1 Ency. of Pl. & Pr. 578, 582, 607, 611, and cases cited; *Thomas v. Nelson,* 69 N. Y. 118; *Hodge v. Sawyer,* 34 Wis. 397; *Davis v. Chicago etc. Ry. Co.,* 83 Iowa, 744, 49 N. W. 77; *Drew v. Hicks* (Cal.), 35 Pac. 563; *Valencia v. Couch,* 32 Cal. 339, 91 Am. Dec. 589.) As to the sufficiency of the liens, we cite the court to *Hills v. Olig,* 63 Cal. 104; *Jewell v. McKay,* 82 Cal. 144, 23 Pac. 139; *Jones on Liens,* sec. 1405; *Malone v. Big Flat Gravel Min. Co.,* 76 Cal. 578, 18 Pac. 772.

HUSTON, J.—On the eleventh day of November, 1891, the appellant corporation was the owner of certain mining property situated in Shoshone county, Idaho, and on that day made and entered into the following contract, in writing, with one John H. Davey and Frank J. Davey (Exhibit "A"):

"This agreement, made and entered into this eleventh day of November, 1891, by and between the Argentine Mining Company, a corporation, duly organized and existing under the laws of the state of Oregon, party of the first part, and John H. Davey and Frank J. Davey, of Wardner, Idaho, parties of the second part, witnesseth: That the party of the first part, in consideration of the sum of one dollar to it in hand paid, the receipt whereof is hereby acknowledged, does hereby covenant and agree that the parties of the second part may enter into and upon that certain mining claim known as and called the 'Argentine Lode,' situated on Bonanza gulch, a tributary of the south fork of the Coeur d'Alene river, in Evolution mining district, county of Shoshone, and state of Idaho, and to mine and extract therefrom, and ship and sell, the ores therein contained, for and during the term of eight months from and after the date of this agreement, which date shall be deemed the time when said parties of the second part shall take possession thereof. And the parties of the first part do further agree that if the said parties of the second part shall, within four months of the time of taking possession of said mine, pay and deposit in the Exchange National Bank of Spokane, state of Washington, to the credit of the party of the first part, the sum of thirteen thousand dollars ($13,000), and shall also, within eight months of the time of taking possession of said mine, pay and deposit in said bank, to

the credit of the party of the first part, the further sum of
$13,000, and shall pay into said bank the further sum of ten
thousand dollars ($10,000), whenever the party of the first part
shall deposit in said bank a receiver's receipt showing that the
party of the first part has entered said mining claim at the
United States land office at Coeur d'Alene, Idaho, then, upon
said payments being made, the party of the first part will make,
execute, and deliver to the parties of the second part a good
and sufficient deed conveying to the parties of the second part
the said mining claim. It is further agreed by and between
the parties hereto that the net profits of the working of said
mine, and the sale of ores, by the second parties, shall be de-
posited in the said Exchange National Bank of Spokane, state
of Washington, where a triplicate of this agreement is deposited,
and that such net proceeds so deposited, shall apply upon and
be deemed a payment to the amount thereof upon this agree-
ment, and to be applied to the first payments becoming due
thereon; it being understood and agreed between the parties
hereto, however, that, in arriving at said net profits, only the ac-
tual cost of mining, shipping and treatment of the ores shall be
deducted from the gross value thereof, and that the balance of
the proceeds shall be deemed the net profits; in other words,
it being the intent and meaning of this clause that any work
commonly called 'dead work' by miners shall not be deducted
from the proceeds of the ores in arriving at the net profits. It is
further agreed and understood between the parties hereto that
if, at the expiration of said eight months, the said parties of
the second part shall have made the said two thirteen thousand
dollar payments, and the said receiver's receipt for the entry of
said mine shall not then have been obtained by the first party,
and deposited in said bank, that then, and in that case, the
parties of the second part shall be entitled to go on and work
said mine in the same manner as before, depositing the net
proceeds of such working in said bank until a sufficient sum is
there deposited to pay said ten thousand dollars ($10,000); and
that thereafter the parties of the second part shall be entitled
to go on and work said mine in such manner as they shall see
fit, and to have to their own use all the proceeds of the ores,
as fully and to all intents and purposes as though they had a

deed therefor; but the said party of the first part shall not be entitled to draw said sum of ten thousand dollars ($10,000) from said bank until it shall have procured and deposited therein the said final receiver's receipt for the entry of said mine. The parties of the second part further agree that, in working said mine, they will do so in an economical and miner-like manner, and that all tunnels, drifts, shafts and stopes therein shall be promptly timbered wherever necessary to preserve the work therein. It is further agreed between the parties hereto that, if the parties of the second part shall fail to make any of said payments within the time herein mentioned, then this agreement shall, at the option of the party of the first part be forfeited, and all payments previously made shall also be forfeited to the party of the first part; and the parties of the second part agree that, upon such forfeiture, they will quit and deliver up to the party of the first part the possession of said mine. In witness whereof, the party of the first part has caused its corporate name to be hereunto subscribed by its president, and its seal to be hereunto affixed by its secretary, and the parties of the second part have hereunto subscribed their names, the day and year first above written. In triplicate.

> "THE ARGENTINE MINING COMPANY,
> "By A. J. KNOTT, Pres.    [Seal]
> "JOHN H. DAVEY.    [Seal]
> "FRANK J. DAVEY.    [Seal]
> "Attest: W. S. STEVENS,    [Seal]
> "Secretary."

Under this contract or agreement, said Daveys entered into possession of said mining property in November, 1891, and continued in possession thereof, mining, working and extracting ore therefrom, and disposing of the same, until the latter part of May, 1892, having taken therefrom during that period some $60,000 worth of ore. In the latter part of May, 1892, said Daveys having entirely failed to keep their said contract, and not having made any, or any part, of the stipulated payments, said Daveys surrendered to appellant the possession of said mining property and premises. During and while the said Daveys were so in possession of and working said mine, and

they incurred certain indebtedness, for work and labor done and performed in and upon said mine, and for materials furnished to be used therein and in the working thereof, to secure which certain liens were filed by the parties to whom such indebtedness was due, upon said mine, to foreclose which liens action was brought in the district court for Shoshone county, and judgment recovered therein for the various amounts thereof. This appeal is from such judgment.

Section 5125 of the Revised Statutes of Idaho is as follows: "Every person performing labor upon, or furnishing materials to be used in the construction, alteration or repair of any mining claim, building, wharf, bridge, ditch, flume, tunnel, fence, machinery, railroad, wagon road, aqueduct, to create hydraulic power, or any other structure, or who performs labor in any mining claim, has a lien upon the same for the work or labor done or materials furnished by each respectively, whether done or furnished at the instance of the owner of the building or other improvement, or his agent, but the aggregate amount of such liens must not exceed the amount which the owner would be otherwise liable to pay." It is claimed by appellant that none of the liens sought to be enforced in this action are valid or within the provisions of said section, in that none of the work or labor, nor any of the materials furnished, were so done or furnished for or at the request of the owner of said mine or its agent.

Let us examine these claims or liens in the order in which they are presented in the complaint. The notice of lien filed by the first-named plaintiff, the Parke & Lacy Machinery Company (appearing herein by Thomas Steel, receiver), contains the following words: "That the material so furnished the said mine was under a contract with the same company, made by John H. Davey and Frank Davey, the managers of the said Argentine Mining Company," etc. In support of this statement in their notice of lien, respondents rely upon the said contract or agreement of purchase above set forth, between the said Daveys and appellant, claiming that, by the terms of said contract, the Daveys became and were the agents of appellant. We cannot agree with this contention. While it is true that no question of a lien arose in the case of *Settle v. Winters,* 2

Idaho, 215, 10 Pac. 216, the court did, in that case, define a similar contract to be a lease with option to purchase, and under a statute identical with our section 5128 of the Revised Statutes, which is as follows: "Sec. 5128. The land upon which any building, improvement or structure is constructed, together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof, is also subject to the lien, if, at the time of the commencement of the work or of the furnishing of the materials for the same, the land belonged to the person who caused said building, improvement or structure to be constructed, altered or repaired; but if such person owned less than a fee simple estate in such land, then only his interest therein is subject to such lien."

The supreme court of Montana held in *Block v. Murray,* 12 Mont. 545, 31 Pac. 550, that a lien would not obtain in favor of persons furnishing materials or performing labor for one in possession under such a contract. It can hardly be contended, in the face of the record in this case, that any of the claimants were unadvised as to whom they were giving credit, or to whom they were to look for payment. It does not appear, either from the testimony of John H. Davey, the senior partner in the firm of John H. Davey & Son, or from that of Mr. Hendrie, the manager of the Parke & Lacy Machinery Company, of whom the materials alleged to have been furnished were purchased, that there was any question as to whom the credit was given therefor. Davey testifies that he told Hendrie at the time of making the purchase: "We have all that property [referring to the mining property of the Argentine Mining Company], bought out that company, and we own all that property on a time purchase." The bill was rendered to John H. Davey & Son, was charged on the books of the Parke & Lacy Company to John H. Davey & Son, and subsequently a lien was filed by the Parke & Lacy Company against John H. Davey & Son for this identical claim. It is in evidence in the record that, after the machinery and other materials were furnished by the Parke & Lacy Company, they sent to Daveys a lease, by the terms of which the title to the property was to remain in said Parke & Lacy Company until paid for. Can it be seriously contended, under such a state of facts, that the Parke & Lacy Com-

pany supposed they were dealing with the Argentine Mining
Company, or with John H. Davey as its agent?

Respondent cites the case of *Eaman v. Bashford* (Ariz.), 37
Pac. 24, an Arizona case; but on examination of that case will
show that the lien law of that territory contains the following
provision, not to be found in the statute of Idaho, to wit: "That
the word 'agent' shall be construed to include all contractors,
subcontractors, builders or persons, having charge or control of
a mine," etc. This case can scarcely be recognized as support-
ing the contention of respondents in the case under considera-
tion. It seems to us there is a very marked difference between
the contract in the Arizona case and this case. By the terms
of the contract in that case, the vendor was to have control of
the product of the mine. The bullion was to be shipped in his
name, and returns made to him; and he was required to apply
such proceeds to the payment of costs of the work, in advance
of all other claims. He was thus fully protected against the
encumbering of his property by the vendee. Counsel contend
that, "whatever may be said of the testimony of J. H. Davey,
it is perfectly clear that he assumed to act as the manager of the
Argentine Mining Company." But we must not overlook the
fact that Mr. J. H. Davey, in his testimony, reiterates the state-
ment that the firm of J. H. Davey & Son were the Argentine
Mining Company; that they had bought out that company, and
elected to continue operations in the name of the old company.
At folio 471 of the transcript, he says: "I can tell you, as be-
fore, we were the company ourselves. I was the manager. We
considered that we were the owners of the company." It is ap-
parent from the record that J. H. Davey & Son were, during
the whole period covered by the incurring of all the indebtedness
included in these liens, not only representing themselves as the
"Argentine Mining Company," the successors of the defendant
corporation, but that they were so recognized and accepted by
the creditors herein, and the defendant was not so known or
recognized. Whatever the purpose of the Daveys may have been
in making such representations, one thing is not only apparent,
but conclusive, from the record, and that is that their represen-
tations were taken and accepted by the plaintiffs, as the basis
of their credits; and, while we are in accord with the rule that

the lien law should be liberally construed to the protection of the rights of lienholders, we are not prepared to go to the extent of saying that the laborer or materialman may credit one person, and then recover from another, when the relation of principal and agent is not shown to have existed.

We do not think the record anywhere shows any authority on the part of Knott, the president, or Hetzel, the attorney of the company, to bind the Argentine company to the payment of any claims against the company. The only allegation of ownership which appears in any of the notices of lien in the record is the statement that the work and labor for which the lien was filed "was performed upon the lode mining claim, the property of the Argentine Mining Company," or that the materials furnished "were used upon the Argentine lode mining claim, the property of the Argentine Mining Company." Under the decision of this court in the case of *White v. Mullens,* 3 Idaho, 434, 31 Pac. 801, we do not think the notices of lien in this case sufficient. A statement in the notice of lien that the mines upon which labor was performed or materials were furnished "was the property of the defendant" is not such an allegation of ownership as is required by statute.

It seems to us, from a careful and thorough examination of the evidence in this case, that, at the time credit was given by each and all of the lienholders, it was so given to John H. Davey & Son, and not to the defendant corporation. The judgment of the district court is reversed, with costs.

Morgan, C. J., and Sullivan, J., concur.