## Penney v. Kentucky Utilities Company et al.

(Decided March 6, 1931.)

168

WEBB & WEBB for appellant.

GORDON & LAURENT, and CARR & CARR and H. T. SMITH, for appellees.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—
Affirming.

On March 15, 1927, W. J. Willingham, W. W. Armstrong, and W. D. Fry conveyed to C. A. Penney and Anna G. Penney, his wife, the property known as the Southern Hotel building in Fulton, Ky., for $100,000, $20,000 of which was paid by a conveyance of a farm in Mississippi. The purchasers executed 119 separate notes for $500, payable monthly, and one note for $20,-500, due April 15, 1927. C. A. Penney died in December, 1927. Payment had been made of the notes and interest as they matured up to his death.

J. E. Penney, his brother, had advanced money for the payment of these notes, also for taxes, street assessments, and other charges, and, at the time of the death of C. A. Penney, he and his wife were indebted to J. E. Penney for the amount so advanced. C. A. Penney by his will devised the property to his wife, Anna G. Penney. The unpaid notes executed to the vendors were secured by a lien on the property, and they carried a precipitating clause declaring all the notes due on the failure to pay any note or interest. After the death of C. A. Penney, W. W. Armstrong sold to J. E. Penney his entire interest in the unpaid notes for $15,000.

On January 25, 1928, J. E. Penney by written contract sold and agreed to convey the property to J. F. Smith, reciting that it was incumbered to the extent of the purchase notes, amounting to $76,000 with interest $3,000, street improvements $2,000, sewerage tax $450 and outstanding taxes $900, making in all $82,350, all of which Smith assumed. The total consideration for the property was $102,500; $6,650 of this was paid by the conveyance to Penney of a building in Memphis. Of the remainder, $10,000 was to be paid cash on the delivery of the deed, and a second mortgage on the hotel was

then to be given for $3,500, payable in one and two years, with interest at 6 per cent. On January 28, 1928, J. E. Penney bought of Willingham and Fry their two-thirds of the unpaid notes, and the notes were transferred to him on April 23, 1928. On January 31 the following supplemental contract was made:

"Know all men by these presents; That a contract of sale was signed on the part of J. E. Penney, Seller, and J. F. Smith, Purchaser, on January 25, 1928, involved the purchase by the purchaser of a certain hotel property in Fulton, Kentucky, shown as the Southern Hotel. Copy of the contract is attached to this supplemental contract and reference to said contract for the terms and provisions thereof is now had and made and this agreement is not made for the purpose of changing any terms or any of the provisions of the original contract but for the sole purpose of giving to J. F. Smith, the purchaser, an opportunity to re-finance and repair the Southern Hotel in Fulton County, Kentucky, provided the same can be done within the time allowed for closing by the original contract, to-wit;

"J. F. Smith, the purchaser under the original contract, agrees to prepare plans for remodeling the Southern Hotel in Fulton, Kentucky, and to begin the repairing and remodeling of said hotel at once. The first $10,000 that shall go into the repairing and remodeling of the said hotel is to be paid by the said purchaser, J. F. Smith, and in case more money is required for the remodeling and repairing of said building, then the seller, J. E. Penney, agrees to advance, not to exceed $15,000 on a temporary loan to be used exclusively in the remodeling and repairing of said hotel. The additional $15,000.00 is not to be paid until the purchaser, the said J. F. Smith, has first expended $10,000 toward the repairing and remodeling of said building, and the $15,000 temporary loan is to be spent then only as the remodeling progresses and the final payment made after the building has been remodeled and the repair work completed free and clear of mechanics' liens."

Anna G. Penney signed the contract of sale of January 25, 1928, and Smith planned then to repair the property, but was stopped by Mrs. Penney, who contended that J. E. Penney had not complied with his agreement

with her. On March 12, 1928, Mrs. Penney conveyed to J. E. Penney the property, and Smith then went on with his work of improving the property. J. E. Penney lived in Birmingham. He was a real estate agent, and followed only the business of buying and selling real estate. J. F. Smith was an architect and also a real estate agent living in Memphis; he followed largely the business of improving property after he bought it and then selling it. The hotel property was in bad condition, and Smith conceived the idea of remodeling it and selling it at an advanced price. He spent upon it $10,000, as stipulated above. Penney lent him the $15,000, and he also spent that on the property, but it was in worse shape than he thought, and the total repairs amounted to over $27,500, leaving a balance unpaid. Smith had made arrangements to bond the hotel at a profit, after paying all expenses and liens. But the bond market went down, and he was unable to do this. Thereupon Penney brought this suit for the sale of the property to pay the purchase money due him under the contract. The contractors, for the improvement of the property, had filed liens under Ky. Stats., sec. 2463, for the amounts due them, and they all asserted their claims, alleging that Penney was a partner with Smith in the transaction, although not disclosed, and that the improvements were made by Smith for Penney with his written consent. A large amount of proof was taken, and on final hearing the circuit court held that Penney was not a partner with Smith in the transaction, but that the contractors and materialmen were entitled to a prior lien on the property for the balance due them. From this judgment Penney appeals, and they prosecute a cross-appeal.

Section 2463, Ky. Stats., provides that a person who performs labor or furnishes material, for the improvement in any manner of real estate "by contract with, or by the written consent of, the owner, contractor, subcontractor, architect, or authorized agent, shall have a lien thereon, and upon the land upon which said improvements shall have been made or on any interest such owner has in the same, to secure the amount thereof with cost." By the written contract, above quoted, signed by both Penney and Smith, Smith agreed to prepare plans for remodeling the hotel; to begin the repairing and remodeling of the hotel at once, also to pay the first $10,-000 that should go into the repairing and remodeling of the hotel. The contract therefore unequivocally bound

Smith to do the repairing and to furnish the first $10,000 going into the work. It cannot therefore be maintained, that Penney, when he signed this contract, did not consent that Smith should do this repairing. In fact, the repairing of the property by Smith was the fundamental purpose of the arrangement. It was fully discussed between the parties, and it is clear that the contract would not have been made but for this feature of it. Penney, to secure the necessary repairs, by the contract agreed to lend Smith $15,000 for that purpose. Clearly Penney cannot now maintain that these repairs were not made by his consent in writing when they were made under the written contract signed by him. In 40 C. J. sec. 113, p. 113, the rule is thus stated:

"While there is some authority to the contrary, as a general rule, where the contract of purchase expressly requires or obligates the purchaser to erect certain buildings or make certain improvements, the interest of the vendor becomes subject to the liens of persons furnishing labor and materials for the buildings or improvements, even though the vendee forfeits his contract."

To same effect see 18 R. C. L. sec. 25, p. 896; 58 A. L. R. pp. 914-921, notes.

In Luigart v. Lexington Turf Club, 130 Ky. 473, 113 S. W. 814, the lessee of real estate made certain improvements on it, and the builder asserted a lien on the property. It was held that, as the improvement was not made by a contract with the owner or his written consent, there was no lien on the property of the lessor. But here the improvements were made with the written consent of the owner, who by the contract required the lessee to make the improvements. In Cincinnati Stucco Co. v. North Ky. Fair, 218 Ky. 493, 291 S. W. 715, the Fair Company had not consented in writing to the improvement, and the opinion is rested on this ground. To same effect is Miller v. Johnson, 213 Ky. 473, 281 S. W. 467.

While in a case like this the lien of the vendor for the purchase money is superior to the lien of the materialman for improvements made by him for the vendee without the written consent of the vendor, when the vendor consents in writing to the improvement, the lien under the statute exists against his interests in the land. The circuit court therefore properly adjudged appellees a lien superior to the purchase-money lien of Penney.

Bohn Mfg. Co. v. Kountze, 30 Neb. 719, 46 N. W. 1123, 12 L. R. A. 33; Guiou v. Ryckman, 77 Neb. 833, 110 N. W. 759, 124 Am. St. Rep. 877.

The record does not show that Smith and Penney were partners in the transaction or that Smith was acting in any wise for Penney. He was simply a purchaser of the property, and Penney made the trade after being informed that Smith was worth $100,000 and financially able to carry it out. The court therefore properly refused to enter a personal judgment against Penney in favor of appellees.

The judgment is affirmed on the original and on the cross-appeal.