## Weir et al. v. Jarecki Manufacturing Co. et al.

(Decided Nov. 21, 1933.)

(As Modified on Denial of Rehearing June 12, 1934.)

SANDIDGE & SANDIDGE for appellants.

CARY, MILLER & KIRK for appellees Jarecki Mfg. Co.

JOHN A. DEAN, Jr., for appellees Dewey and Auburn Stinson.

O. L. FOWLER for appellees R. S. Thrasher, V. H. Brewer, and H. Shouse.

GATES F. YOUNG for appellees Farmers' & Traders' Bank of Owensboro.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

In July, 1926, Marion Taylor and his wife executed an oil and gas lease on their 45-acre farm in Daviess county to the Surety Oil & Gas Company. These parties, however, are not involved in this litigation. By mesne assignments from the Surety Oil & Gas Company, Fred L. Weir, Gordon A. Yancey, C. P. Short, and Marvin Jordan became the owners of the entire lease, each owning an undivided one-fourth interest therein.

On October 17, 1928, Weir, Yancey, Short, and Jordan assigned their undivided one-half interest in the lease to F. M. Curtis, who, in consideration therefor, agreed to drill, equip, and fully complete six wells on the lease into tanks free of any expense to his assignors. It was expressly agreed in the written assignment to Curtis that, if he failed to complete the six wells, as provided therein, he should forfeit the said one-half interest in the lease, and same should revert to Weir, Yancey, Short, and Jordan "just as though the assignment had not been executed." This assignment was duly recorded in the Daviess county clerk's office on October 28, 1928. Pursuant to the terms of the agreement, Curtis agreed to drill, case, shoot, equip, and complete said six wells into tanks with power, "free of any cost whatever to the parties of the first part." In clause 2 of the agreement it is provided that he (Curtis) agrees to commence the drilling of the first well within 30 days from the date of the assignment, October 17, 1928, and to commence drilling the second well within 30 days after completing the drilling of the first well, and the third well within 30 days after completing the drilling of the second well, and each following well within 30 days after completing the drilling of the preceding well until completing the drilling of the said six wells. Clause 5 of the agreement reads:

> "It is further understood and agreed that should the party of the second part fail to drill any of said wells at the time or in the manner above specified, or should fail to carry out any of the

agreements or covenants on his part herein made, then this assignment shall be null and void and all interest hereby assigned to the party of the second part in said leases, including wells completed or being drilled, shall be forfeited by the said party of the second part and shall revert to and become the property of the party of the first part just as though this assignment had not been executed, unavoidable accidents and delays excepted.''

Shortly after the execution of the lease, Curtis began to drill the wells, and completed the first well on the lease. He then organized a corporation known as Pops Development Company, and assigned to it his one-half interest in the lease. Marvin Jordan, one of Curtis' lessors, was one of the incorporators of Pops Development Company and acted as vice president and general manager thereof. The corporation thus organized, and becoming the owner of Curtis' one-half interest in the lease, proceeded with the drilling of the wells provided for in the assignment from Weir et al. to Curtis. It completed and partially paid the expense of five wells which proved to be producers of oil in commercial quantities. For some reason not disclosed by the record, Curtis and his corporation failed to commence or drill the sixth well. Thereupon Weir, Yancey, and Short notified Curtis in writing that he had breached the covenant in the assignment, in that he had failed to drill, or commence the drilling, of the sixth well as provided in the assignment, and declared a forfeiture of the one-half interest assigned to Curtis. This notice was given on August 13, 1929. Soon after this notice was given, and before Weir and his co-appellants filed suit to enforce the forfeiture, the Jarecki Manufacturing Company, on September 14, 1929, filed its petition to enforce a materialman's lien for supplies furnished Curtis and Pops Development Company in connection with equipping the wells they had drilled. Soon thereafter similar lien claims were filed by Thrasher, Shouse and Brewer, Stinson Bros., Independent Eastern Torpedo Company, and D. H. Williamson and Robert Williamson, whereby all the above-named claimants asserted liens against the entire leasehold, both the one-half interest which had been assigned to Curtis and the one-half interest which had remained the property of Weir et al. The contract for material, labor, etc., which is the basis of these various claims, was made between

the claimants and Curtis or Pops Development Company. Marvin Jordan, who was one of Curtis' lessors, became interested in the Pops Development Company, and he is now an appellee herein and making no complaint of the judgments herein appealed from.

In the meantime, during the drilling of the wells by Pops Development Company, it borrowed $3,000 of the Farmers' & Traders' Bank of Owensboro, Ky., and executed its note therefor, and as collateral security it pledged and transferred to the bank its one-half interest in the lease which was assigned to it by Curtis, and authorized the bank to collect the oil runs from its said interest and apply same to the note. Pursuant to this arrangement, the bank collected the oil runs and applied same as payments on the note. The bank filed its claim with the master commissioner, and stated that, by virtue of the oil runs which had been applied on the note, there was a balance of $940.25 still due thereon. The bank did not assert this claim as a mechanic's lien, but alleged that it was entitled to have same adjudged a preferred claim in the adjustment of the affairs of Pops Development Company, and that its claim should have priority over all other claims to the proceeds of the oil runs. Weir, Yancey, and Short filed an answer and cross-petition against their codefendants, Pops Development Company and F. M. Curtis, seeking a forfeiture of the one-half interest in the lease which they had assigned to Curtis. The court sustained the cross-petition and entered a judgment declaring said forfeiture effective as of August 13, 1929, which was the date of serving of notice by Weir et al., declaring its intention and asserting the forfeiture pursuant to the terms of the assignment to Curtis.

All these claims above mentioned were filed with the master commissioner, and, after taking much proof, the commissioner ruled and reported to the court that all the said claimants had a lien on the entire leasehold in the sum of their respective claims. Exceptions were filed by appellants Weir, Yancey, and Short to each and every part of the report of the commissioner.

The court considered the report and the exceptions thereto, and ruled that Jarecki Manufacturing Company had a valid mechanic's lien for the sum of $8,539.48, and that Stinson Bros. had a like lien for the sum of $1,286.26; that Independent Eastern Torpedo Company

had a like lien for $630; that Thrasher, Shouse, and Brewer had a like lien for the sum of $225; that D. H. Williamson had a lien for $212.50, and Robert Williamson had a like lien for $180; and that such liens were upon the entire leasehold, both the one-half interest of Curtis and the one-half interest of Weir et al. The court entered a judgment accordingly, and ordered the sale of the entire leasehold, and directed that the one-half interest of Curtis should be first offered for sale, and, in the event it did not bring an amount sufficient to satisfy all lien claims, then the entire leasehold should be sold. Pursuant to this order, the entire leasehold was sold by the master commissioner, and the Jarecki Manufacturing Company became the purchaser thereof for the sum of $9,000, which sum was prorated among the lien claimants.

Upon the commencement of this litigation, September 14, 1929, the pipe line company withheld payment for the oil runs from the lease. It appears that the sum of $3,076.53 had accumulated in the hands of the pipe line company for the oil between the commencement of the litigation and August 17, 1930, the date of sale, which sum was paid to the master commissioner pursuant to an order of court. Out of this sum the court ordered the payment of $750 to Jarecki Manufacturing Company and $280 to Fred L. Weir to cover their expense in maintaining and operating the lease pending litigation. This left a balance of $241.53 in the hands of the commissioner from the oil runs. The court held that the Farmers' & Traders' Bank was entitled to its claim of $926 balance on the note, and ordered this sum paid to the bank out of the said balance of the oil run funds.

From that judgment Weir, Yancey, and Short prosecute this appeal, and urge a reversal for reasons: (1) That the court erred in adjudging that the mechanic's lien claimants were entitled to liens on more than one-half interest of the leasehold which was assigned to Curtis and by Curtis to Pops Development Company; and (2) that the court erred in adjudging that the bank had any lien upon the oil runs which had accumulated pending litigation because such oil runs had been run after the effective date of the forfeiture of the one-half interest in the lease which it held as collateral security to the note.

Section 2479a-2 in part reads:

"If the lessee claims by executory contract, and if for any cause, such contract shall be rescinded or set aside, the lien aforesaid shall follow the leasehold into the hands of the person to whom the same may go, or with whom it may remain by reason of such rescission. If by such rescission the interest covered by the lease becomes vested in the lessor, *the interest so covered by the lease shall be subject to said lien.* * * * In the event the lease shall expire or be forfeited or the lessee shall in any other way lose his rights thereunder, nevertheless the lien herein provided for shall be effective against the leasehold, whoever may be the owner thereof, *to the extent of the interest held by the lessee at the time such work or labor was performed or the things herein mentioned furnished and this shall be true, although the interest of the lessee may refer to the lessor.*" (Italics ours.)

But sections 2464 and 2465 must be read in connection with section 2479a-2, relied on by appellees.

Obviously the claimants herein are entitled to a lien against the leasehold, and this involves the further question as to what constitutes the *leasehold* in question so far as the lien claimants are concerned.

It will be seen that the Statutes, supra, create a lien only on the interest held by the lessee.

It is specifically set out in the contract between the appellants and Curtis that only one-half of the original leasehold was assigned to Curtis and Pops Development Company, with whom the claimants, appellees, contracted, and it is further provided that the said six wells should be completed and equipped in the manner specified *"without any cost or expense whatsoever to the parties of the first part."* (Italics ours.) This contract was recorded, and therefore constituted notice to appellees, the claimants, who contracted and dealt with Curtis and Pops Development Company. Mayfield Planing Mills v. Jackson Purchase Stock Yards Co., 248 Ky. 449, 58 S. W. (2d) 617. It follows then that the *leasehold,* in so far as appellees are concerned, was the one-half interest assigned by appellants to Curtis and Pops Development Company. Stark v. Petty Brothers, 195 Ky. 445, 243 S. W. 50. Counsel for appellees seem to,

be confused as to what constitutes the leasehold herein involved, and argue that it embraces the entire lease held by Weir et al., appellants. But it is our view that such construction would be contrary to the plain and simple language used by the contracting parties embraced in the contract between appellants and Curtis. It is not within the functions of the courts to make contracts for people but to construe same according to the language used by the contracting parties. Pops Development Company acquired no more rights than that held by its assignor, Curtis. It cannot be said that there is any ambiguity contained in the contract with reference to the interest owned or held by Curtis and Pops Development Company, or that the six wells provided for therein were to be drilled without any cost to appellants. It is a settled rule that a mechanic's lien attaches only to the interest in the property of the person who creates the lien, and that his interest only can be sold to satisfy same, unless the owner consents in writing that such liens be created. Hines v. Hollings-worth-Young Hardware Co., 178 Ky. 233, 198 S. W. 716, 4 A. L. R. 1018; Staton Springs Park Co. v. Keesee, 217 Ky. 329, 289 S. W. 292.

It is argued for appellees that the written contract between appellants and F. M. Curtis, which was later assigned to Pops Development Company, constituted "written consent of the owner" under section 2479a-1, Kentucky Statutes, which provides that materialmen and laborers may have a lien upon the property which they have improved "by the written consent of the owner." True it is that the lease was a written consent of appellants for Curtis or his assignees to enter upon the premises for the purpose of drilling and equipping the wells. But under the plain provisions of the contract that the wells were to be drilled and equipped free of any cost to appellants, all of which the lien claimants had notice, there was no written consent that Curtis should drill the wells at the cost of his vendors, appellants. The lien claimants knew that Pops Development Company owned only one-half interest in the property and were obligated to drill and equip the wells at their own cost. There was no contractual relation between the appellants and the lien claimants. Appellants did not contract to furnish any of the money nor have any connection whatever with the drilling of the wells, which was the sole consideration Curtis was to pay for

the property conveyed to him. In 18 R. C. L. sec. 25, on page 897, the rule as between vendor and vendee and lien claimants is stated thus:

"And while a contractor or person furnishing labor or material is put upon notice of the contract between the vendor and vendee, he may show a parol agreement between them from which authority to incur expense in improving the property may be inferred, and is not bound by the terms of the written agreement between them. Belnap v. Condon, 34 Utah, 213, 97 P. 111, 23 L. R. A. [N. S.] 601. And one who furnishes material on the order of the record-owner of land, without knowledge of a secret conveyance thereof to another, or of verbal agreements between the vendor and purchaser, is not bound by such conveyance or agreements, and is entitled to a lien against the property. McCollum v. Riale, 163 Pa. 603, 30 A. 282, 43 Am. St. Rep. 816. A vendor's interest may also be subjected to a lien on a contract made with his vendee upon the application of the general principles of estoppel [Knauf & T. Co. v. Elkhart Lake Sand & Gravel Co., 153 Wis. 306, 141 N. W. 701], 48 L. R. A. [N. S.] 760. *It follows from all this that when the vendor has no contractual relation with the lien claimants or is not subject to an estoppel, a lien cannot be enforced against his interest after the person in possession has failed to fulfill his contract or purchase the property.* Steel v. Argentine Min. Co., 4 Idaho, 505, 42 P. 585, 95 Am. St .Rep. 144." (Our italics.)

In the case at bar the lien claimants were put upon notice of the contract between appellants and Curtis, and there is no contention that there was any parol agreement or other modification of the contract. Nor is there any grounds of estoppel invoked, or other features taking the case out of the rule above stated. Curtis failed to fulfill his contract or purchase the property, which brings this case within the rule of Steel v. Argentine Min. Co., supra.

Appellees cite and rely on the case of Penney v. Kentucky Utilities Co., 238 Ky. 167, 37 S. W. (2d) 5, 7, and other cases of similar import; but an analysis of the facts of those cases discloses that they are not analogous to the facts in the case at bar. In the Penny

Case, supra, the contracting parties were all connected with each other. Penney, the landholder, to secure the necessary repairs, by the written contract, agreed to lend Smith money for that purpose. The court said:

"Clearly Penney cannot now maintain that these repairs were not made by his consent in writing when they were made under the written contract signed by him."

As above indicated in the case at bar, appellants did not contract with their vendee, Curtis, to furnish him money or otherwise aid and assist in drilling the wells.

The contractual relations between appellants and F. M. Curtis is that of vendor and vendee, or seller and purchaser; consequently, the relation of principal and agent in no sense existed between such seller and purchaser. York v. Hogg, 171 Ky. 599, 188 S. W. 663. The rule is the contrary between lessor and lessee where the lessor receives a royalty arising from the operation of the lease by the lessee. Kentucky Harlan Coal Co. v. Harlan Gas Coal Co., 245 Ky. 234, 53 S. W. (2d) 538. The expressed provision of the written instrument conveying a title of one-half interest to Curtis expressly provided that the one-half interest, the title of which was reserved by the seller, was notice to those who contracted with Curtis or his sublessee or assignee, and to permit the mechanics' lien statutes to prevail over this provision, in their conveyance, would be equivalent to allowing the Mechanics' Lien Law to deprive property owners of selling and conveying their property as by the terms agreed upon by them and the purchaser. To avert this consequence, sections 2464 and 2465 of the Mechanics' Lien Law were enacted, which allow the claimant of a mechanics' lien where a contract is rescinded or set aside, the lien to follow to the extent only that the actual value of the property may be enhanced by the improvements so placed upon it and that the holder of the mechanics' lien may be substituted to the lease of the person so evicted and shall have satisfaction of the debt and cost as enough out of the sum adjudged for improvement. The cause of the action of the plaintiffs is not predicated on either or both of these sections of the Statutes. Curtis having bought only one-half interest in the property and there being no relation of principal and agent existing where the contract relations of the parties is that of seller and purchaser,

only the interest of Curtis is subject to the mechanics" lien.

Having reached these conclusions, it follows then that the claimants are entitled only to a lien on the one-half interest in the lease assigned by appellants to Curtis and Pops Development Company plus the interest of Marvin Jordan, which he assigned to the company; and. the Farmers' & Traders' Bank is entitled only to a lien on one-half of the oil runs produced by the said wells from the time it contracted therefor to and including August 13, 1929, which was the effective date of the forfeiture. It follows then that the court erred in adjudging the lien claimants a lien on any interest more than that assigned to Curtis and Pops Development Company plus Marvin Jordan's interest, to and including the date of forfeiture, and in adjudging the bank entitled to any proceeds of the oil runs after said date.

For reasons indicated, the judgment is reversed and remanded for proceedings consistent with this. opinion.