# Schott *versus* Harvey.

1. The provision of the Act of June 11, 1879 (P. L., 128), that certain factories, etc., shall be provided with fire escapes by the "owners," or other persons therein designated, does not apply to an owner in fee, not in possession, who has leased the premises to a tenant who occupies the same as such a factory.

2. Such tenant in possession, using the premises as such a factory, is the "owner" of the factory, within the meaning of said Act, for the purposes and under the liability therein provided.

January 29, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

ERROR to the Court of Common Pleas No. 4, of *Philadelphia county:* Of July Term 1883, No. 226.

Case, by Matilda H. Schott, by her next friend Christian Schott, against Joseph Harvey, to recover damages for per-

sonal injuries suffered by plaintiff, caused as alleged by the failure of the defendant to provide a fire escape for a certain factory, of which defendant was the "owner," as required by the Act of June 11, 1879, (P. L. 128). The defendant pleaded specially that the factory, at the time of the injury, was in the actual possession of a tenant under a lease from defendant.

The following special verdict was found by the jury:—

" The jury find that the defendant, on October 12, 1881, was seized in fee simple of the Randolph Mills on Randolph street, above Columbia avenue, Philadelphia. That he was not in actual possession of said mill on that day, but that said mill was in possession of Charles H. Landenberger, a lessee from year to year, beginning January 1, 1880, under a lease which was a renewal of a lease to Mary A. Landenberger, which commenced January 1, 1879, and was renewed to Charles H. Landenberger, September 26, 1880, to take effect January 1, 1881, and that said lessee occupied and used the said mill exclusively of the defendant; that the said mill was burned on the night of October 12, 1881 ; that the said mill was more than three stories high, and that operatives were employed therein, and that the plaintiff was at work as an operative in the said mill, at the time of the fire, and was injured by being compelled to jump out of a four-story window of the said mill, that there was no external fire-escape on said mill, and that if there had been the plaintiff could have got out of the mill without injury. If upon the above facts, the court should be of the opinion that the plaintiff is entitled to recover, then we find for the plaintiff, and assess the damages at $700, but if the court should be of the opinion that the defendant was not the owner of the mill at the time of the fire within the meaning of the Act of June 11, 1879, then we find for the defendants."

The Act of June 11, 1879, (P. L. 128) is as follows:—

An Act to provide for the better security of life and limb, in cases of fire in hotels and other buildings.

Whereas, in consequence of fires breaking out in hotels, factories and other high buildings, many lives have been lost and great personal injuries suffered, through the want of efficient means of escape therefrom, independently of the ordinary internal stairways ; therefore,

Section 1. Be it enacted, etc.,   That all the following described buildings, within this Commonwealth, to wit: Every building used as a seminary, college, academy, hospital, asylum or a hotel for the accommodation of the public, every storehouse, factory, manufactory, or workshop of any kind in which employees or operatives are usually employed at work in the third or any higher story, every tenement house or building

in which rooms or floors are usually let to lodgers or families, and every public school building, when any of such buildings are three or more stories in height, shall be provided with a permanent safe external means of escape therefrom in case of fire; and it shall be the duty of the owners or keepers of such hotels, of the owners, superintendents or managers of such seminaries, colleges, academies, hospitals, asylums, storehouses, factories, manufactories, or workshops, of the owners or landlords of such tenement houses, or their agents, and of the board of school directors of the proper school district, to provide and cause to be affixed to every such building such permanent fire escape.

Section 2. Provides for the examination and approval by the proper officers of the fire escapes.

Section 3. Every person whose duty it is by the first section of this Act to provide and cause to be affixed to any of said buildings such external fire escape, and every such school district, shall also be liable in an action for damages, in case of death or personal injury sustained in consequence of fire breaking out in any such building and of the absence of such efficient fire escape; and such action may be maintained by any person now authorized by law to sue in other cases of similar injuries; all persons failing to comply with the provisions of this Act, shall be liable to a penalty not exceeding ($300) three hundred dollars, to be collected as fines and forfeitures are now by law collectible.

The court subsequently entered judgment for defendant on the special verdict, whereupon the plaintiff took this writ of error, assigning for error the said judgment.

*Charles S. Keyser*, (*John A. Clark* with him,) for the plaintiff in error.—The only question is whether the defendant, having leased the factory, is an "owner" of it, within the meaning of the Act of June 11, 1879. Whether or not the tenant in possession could be held to come within the term "owners," as used in the statute, is immaterial to this case. If the owner in fee and lessor is included in the legislative intent, the judgment below is erroneous, even though the tenant as owner of the term might also be liable.

The Act provides, first, that certain descriptions of buildings "shall be provided with a permanent safe external means of escape therefrom in case of fire;" second, that "it shall be the duty of the . . . . . owners, superintendents or managers" of such factories, &c., " to provide and cause to be affixed to every such building such permanent fire escape." The term "owner," as used in popular parlance, at common law, in judicial decisions and in legislative enactments of this

state, signifies, primarily and in the absence of qualification, the owner of the freehold. In order, therefore, to restrict its meaning, in an Act of Assembly, to a tenant for years, or " owner of a term," some clear intention must appear in the words of the statute—but none such appears in this Act. The legislative *power* to impose such duties on the owner of the fee cannot be questioned, the only question is the legislative *intent.* The legislative *object* was protection of life in case of fire; the intent was to secure that object, beyond peradventure, by imposing the duty on the " owners, superintendents or managers of the factory." Lessees are not mentioned. It is no answer for the landlord to say that his act in providing the fire escape might be a trespass or eviction, nor for the superintendent or manager to say that such act is not permitted by the lease, or not within the scope of his employment. There are many cases where public policy, the common law, or statutory provisions prescribe or sanction interference with private rights for the public safety or welfare. Instances may be found in the police and sanitary regulations, building laws, the right to enter or pull down buildings to prevent the spread of fire, the right of a traveller to pass over private land when the highway is obstructed, and generally to do whatever is necessary for the preservation of human life. No constitutional inhibition applies to such cases. The authority of the statute is ample justification for such supposed trespass, and the landlord is liable for injuries caused by the omission to perform his statutory duty: Turnpike Road *v.* Brosi, 10 Harris, 29.

*R. C. McMurtrie, (John Roberts* with him,) for the defendant in error. The legislative intent, we contend, was to impose this important duty upon those persons whose volition gave rise to or continued the necessity, and who could always be capable of ascertainment, rather than on persons who might be ignorant of the circumstances which gave rise to the necessity, who might have no legal power to perform the required act, who might be absent from the jurisdiction or incapable of ascertainment. The duty is a conditional and shifting one, dependent on the use of the building by the occupant, and it is reasonable to construe the word "owners" as " occupying owners," who could at their option cause the duty to arise or to cease, by the character of their occupation. Until there was an occupant and a factory, there was no duty. The defendant was in no sense the owner of the *factory,* though he owned the building which was his tenant's factory, and which might at any time cease to be a factory by the tenant's withdrawing his machinery and operatives: Voor-

9 OUTERBRIDGE.—15.

his *v.* Freeman, 2 W. & S., 119. The position we contend for has been adopted and forcibly maintained by HARE, P. J., in C. P. No. 2, in a similar action against this defendant, and in other cases in the Common Pleas Courts of Philadelphia; also, under a similarly worded statute of Ohio, in Lee *v.* Kirby, 10 Weekly Law Bulletin (Columbus and Cincinnati) 449.

Mr. Justice PAXSON delivered the opinion of the Court, February 25, 1884.

The Court below entered judgment for the defendant upon the special verdict. This is the only error assigned.

The said verdict finds, inter alia, that the defendant was seised in fee of the Randolph Mills at the time they were destroyed by fire on the night of October 12, 1881; that he was not in the actual possession thereof on that day, having previously leased the same to Charles H. Landenberger, who was the tenant occupying the same; that the said mill was burned on the night before stated; that it was more than three stories high; that the plaintiff, with other operatives, was at work in said mill, and was injured by being compelled to jump out of a four story window; that there was no external fire escape on said mill, and that if there had been the plaintiff could have got out of the mill without injury.

The single question for our determination is, whether the defendant was the owner of the mill within the meaning of the Act of June 11, 1879, entitled "An Act to provide for the better security of life and limb in cases of fire in hotels and other buildings." P. L., 128.

The first section of said Act provides that every building within this Commonwealth used as a seminary, college, academy, hospital, asylum, or hotel for the accommodation of the public, every store-house, factory, manufactory, or workshop of any kind in which employees or operatives are usually employed at work in the third or any higher story; every tenement house or building in which rooms or floors are usually let to lodgers or families, and every public school building, when any of such buildings are three or more stories in height, shall be provided with a permanent safe external means of escape therefrom in case of fire; and it shall be the duty of the owners or keepers of such hotels, of the owners, superintendents or managers of such seminaries, colleges, academies, hospitals, asylums, store-houses, factories, manufactories or work-shops, of the owners or landlords of such tenement houses or their agents, and of the board of school directors of the proper school district, to provide and cause to be affixed to every such building such permanent fire

escape. The second section provides for the examination, testing and approval of such fire escapes by certain officers mentioned therein; while the third section makes every person whose duty it is to put up such fire escapes liable to the party injured in case he neglects or omits to put up "such efficient fire escape," and also subjects him to a penalty not exceeding $300.

It is to be regretted that an Act of so much importance, and having so meritorious an object, should not have been prepared with more care. It is not my purpose, however, to point out its obvious defects. I shall discuss it only as it applies to the facts of this particular case.

It is certainly a highly penal statute. It imposes a duty unknown to the common law, and punishes a neglect of that duty in the manner above stated. It is almost needless to say that such an Act cannot be extended by implication to parties who do not clearly come within its terms.

The special verdict does not technically bring this case within the Act. But, as the "Randolph Mills" were conceded upon the argument to be a factory, I will consider the case as if such fact had been embodied in the verdict. We find then in the Act that it is made the duty "of the owners, superintendents, or managers of such . . . . . factories . . . . . to provide and cause to be affixed to every such building such permanent fire escape."

It will be noticed that the Act is in the disjunctive. The duty is imposed upon the owners, superintendents or managers of factories; the owners or keepers of hotels; owners or landlords of tenement houses, or their agents, &c. Which of these classes did the legislature intend to make responsible for a neglect to comply with the law? If the object was to impose a joint liability upon all, the Act would not have been framed in the disjunctive. A more reasonable construction would seem to be that it was intended to reach the person in possession with a power of control, whether he be owner, superintendent or manager. However hard such a rule might be in the case of a superintendent or manager, he could avoid the responsibility by declining to act as such in a factory where his principal refused to provide it with an "efficient fire escape."

But the question which more immediately concerns us is, who is the "owner" of a factory within the meaning of the Act? The plaintiff contends that the owner is the person who holds the fee in the land on which the factory building stands. The word "factory" is a contraction of manufactory, which Webster defines to be a building, or collection of buildings, appropriated to the manufacture of goods. But a manufactory

[Schott *v.* Harvey.]`

is something more than a building. It includes not only the building, but the machinery necessary to produce the particular goods manufactured, and the engines or other power requisite to propel such machinery. A building with only bare walls and a roof would no more be a manufactory than it would be a hotel. Such a building would be a mere shell, and would not impose the duty of erecting fire escapes upon any one. It is only when it is completed by the addition of machinery, and operatives are introduced to assist in the manufacture that the duty of erecting fire escapes attaches. To whom does that duty attach? Clearly to the occupant in possession, who places the operatives in a position of danger, and enjoys the benefit of their services. If he is the lessee of the building, then he is a tenant in possession. For all practical purposes he is the owner until the end of his term, which may be in one year or in one hundred years. There is a large amount of property held in reversion in the city of Philadelphia. Some of the leases are for a term of several hundred years. However long the term the lessee is but a tenant for years; the fee is in him that hath the reversion. Yet the broad principle contended for would make the reversioner, who has practically parted with all control of the property, responsible for the neglect of the tenant in possession to put up fire escapes. And this would be so even if the property leased had been a vacant lot, and the factory building had been erected, and the machinery placed therein by the tenant subsequent to the lease. We cannot impute to the legislature an intention of doing a thing so palpably unjust and absurd as this. When, therefore, they used the word "owner" in this connection, it is plain the owner at the time of the injury was contemplated without regard to the quantity or duration of his estate. It will be noticed that the Act does not say the owner of the factory building or of the ground on which it stands.

. A number of authorities were cited showing the construction which has been placed upon the word "owner" both by the legislature and the courts. But the meaning of the word depends in a great measure upon the subject matter to which it is applied, and as it is used in each of the instances cited in an entirely different connection, they throw scarcely a glimmering of light upon the question. The term "owner" is undoubtedly broad enough to cover either view of the case. A tenant for years, a tenant for life, and a remainder man in fee is each an owner. So there may be a legal and an equitable estate; the trustee and the *cestui que trust* are both owners. When, therefore, the legislature used a term of such varied meaning we must presume they intended such an owner as is

in the possession and occupancy of the premises, who has the immediate dominion and control over it, and the manner of whose use of it makes a fire-escape necessary. Had the owner in fee been intended it was easy to have said so. This view meets all the requirements of the Act. It places the responsibility where it properly belongs, upon the person in the possession and occupancy of the property as owner for the time being, and the nature of whose business renders the erection of fire-escapes necessary to protect the lives of his employees.

This is a case of first impression in this State, and we have but little authority on the subject. This could not well be otherwise with so recent an Act of Assembly upon so novel a subject. A similar law exists, however, in the State of Ohio, and in the recent case of Lee v. Kirby, decided in the Superior Court of Cincinnati, and reported in the Columbus and Cincinnati Weekly Law Bulletin, vol. 10, page 449, a similar construction was placed on the word "owner." It was there held by HARMON, J. that the owner in fee of a lot and building thereon, which he does not occupy, but which is let to a firm which occupies and uses the same as a factory or workshop, is not the "owner of any factory, workshop," etc., within the meaning of the Act relating to fire-escapes. And it is not without weight that three of the Courts of Common Pleas for the county of Philadelphia have adopted the same view.

The fact, as found by the special verdict, that the defendant renewed the lease before its expiration, is without significance. Our conclusion that the owner in fee, unless in the occupancy and possession of the premises, is not the owner contemplated by the Act, renders any further discussion of the case unnecessary.                                  Judgment affirmed.