# S. G. Purvis & Co. *v.* Assigned Estate of Agnes T. Brumbaugh.

*Building contract—Covenant against liens—Fraud.*

The mere fact that the holder of a legal title, subject to a recorded declaration of trust, in favor of trustee's wife, designates himself in a building contract by the word " owner," is not such fraudulent misrepresentation as will debar the wife or her lien creditors from insisting on a covenant, in said building contract, against liens, either as against the contractor or subcontractors.

*Building contract—Contractor or agent—Covenant against liens.*

A contractor does not lose his character as such, in his relation to the subcontractors, and become the agent of the owner by virtue of a stipulation in a building contract, that he will file with the owner a list containing the amounts of the respective bids of all subcontractors and material-men before any payments are made . . . . that such subcontractors may be paid on order issued by the contractor to the extent of eighty per cent of the value of their work. Such stipulations do not affect a covenant against liens.

*Contract—Independent covenants—Covenants to pay, and not to file lien.*

A covenant not to file liens entered into by the contractor and a covenant by the owner to pay in instalments are separate and independent covenants, and failure to meet the instalments does not relieve from the covenant not to file liens. Long v. Caffrey, 93 Pa. 526, followed.

*Contract—Improvement of wife's real estate—Wife's liability—Mechanic's lien.*

A husband having, as the agent for his wife, contracted for the erection of a house on the land of the wife, but with a clause waiving right of lien by the contractor, such contractor and subcontractors are entitled to pro

rata distribution of the proceeds of an assignment of the wife's estate. The creditors' rights are based, however, on the contractual relations; they have no standing as mechanics' lien creditors, but must claim as simple contract creditors who, relying on the contract, must take it in its entirety and with its inhibition of the right of lien. The contract antedating the Act of June 26, 1895, P. L. 369, the subcontractors were bound with constructive notice and were bound to investigate; failing to do so they acted on their own risk.

Argued April 13, 1898. Appeal, No. 103, April T., 1898, by S. G. Purvis & Co., from decree of C. P. No. 2, Allegheny Co., Oct. T., 1896, No. 100, affirming report of auditor, making distribution of Agnes T. Brumbaugh's assigned estate. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Exceptions to auditor's report.

It appears from the record that the controversy arose in making distribution of a fund arising from the sale of the assigned estate of Agnes T. Brumbaugh. Priority of lien was claimed by certain mortgage creditors and by certain mechanics' lien creditors, there being also other unsecured creditors. The auditor found that the right to lien had been waived in the building contract, and that therefore the subcontractors had no standing as lien creditors by reason of such waiver. The mortgage creditors were directed to be paid in full, and the balance distributed pro rata among all the remaining creditors. The contractor and subcontractors were not permitted to participate as lien creditors, but as simple contract creditors.

Other facts in detail are fully and adequately set forth in the opinion of the Superior Court and in the following conclusions of law by the auditor, W. T. Tredway, Esq.

1. From the fact that all lien creditors at the date of the assignment joined in the petition for the sale of the property by the assignee, and the further fact that there is not a sufficient fund to pay the claim of nonlien creditors in full, the auditor concludes that the claims of all lien creditors should be paid in full with interest thereon to March 25, 1897, the date of the sale of the real estate by the assignee.

2. In accordance with the opinion of the Supreme Court in the assigned estate of Jamison & Co., 163 Pa. 143, all other claims which the auditor finds entitled to share in the distribu

tion, shall be prorated in proportion to the amount of the respective claims with interest to the date of the assignment.

3. The auditor is clearly of the opinion from the facts above set forth, and the testimony adduced, that the contractor and all subcontractors are entitled to share in the distribution, their dividend to be prorated with their respective claims, in analogy with the opinion of the Supreme Court, cited by counsel for S. G. Purvis & Co., in Jobe v. Hunter, 165 Pa. 5. The facts in this case are on all fours with the facts in the case cited, wherein the court says: "On the merits of the case it was shown without contradiction, by competent testimony, that the wife had full knowledge of the contract, that the building was being erected on her land, that she took part in the conversations between her husband and the contractors relative to the work as it progressed, that she made no objection at any time, and that considerable sums of money were paid on the contract from time to time, until only a small balance remained unpaid, and for the recovery of that sum this action was brought. As none of these facts were disputed, it is a necessary assumption that the work was done and the building erected on the land of the wife, with her full knowledge and consent. In the case of Forrester v. Preston, 2 Pittsburg Report, 298, it was decided by the district court of Allegheny county that in just such circumstances as these the wife was liable. Said WILLIAMS, J., in that case: 'But the building in this case was not erected without the consent of the wife, under a contract made with a stranger. It was erected under a contract made with the husband, and as the facts abundantly show under the knowledge, approbation and concurrence of the wife. It is true that the husband made the contract in his own name, but the building was with the knowledge and concurrence of his wife, designed and erected for her, and therefore in making the contract the husband may be regarded in law as the agent of the wife, so much so as if he had avowedly acted by her express authority. The husband's agency may be legitimately inferred from the relations and acts of the parties.' As we regard this as good law, and as it was pronounced long before the married persons property act of 1887 was passed, by which the contracting power of married women was so greatly enlarged, it is cer-

tainly good law now.   This case arose while the act of 1887
was in force, but the act of 1893, which repealed the act of
1887, still further enlarges the contracting power of married
women, and it may well be, that under either of these laws it
would no longer be necessary to refer her liability in such cases
as this, to an assumed agency of her husband.   However that
may be, we are clearly of the opinion that upon the undisputed
facts of this case, the defendant, Alice Hunter, and her lot
upon which the house in question was erected, are plainly lia-
ble to the plaintiff's claim."

The foregoing case was tried in the court of common pleas,
No. 2, of Allegheny county, before his honor, Judge MAGEE,
where a verdict was had for the plaintiff, and the foregoing
opinion delivered by Mr. Justice GREEN, on an appeal of the
case to the Supreme Court.   Under the law set forth in that
opinion, the auditor is unable to distinguish the claims of the
contractor and the subcontractors presented before him claim-
ing distribution from the funds arising from the sale of the
property of Agnes T. Brumbaugh, from that of the claims of
the plaintiff, against the defendant in that case.   It is true that
that was a proceeding on a mechanic's lien, but the court
in its opinion plainly indicates the liability of the defendant,
aside from the property against which the lien was filed.
The contention of the counsel for Agnes T. Harley, now Mrs.
Brumbaugh, is, that she, having derived the money, $6,000,
through her husband's estate by a former marriage, prior to
her marriage with Dr. S. O. Brumbaugh, and having prior to
her marriage with Dr. Brumbaugh, and some six weeks prior
to the date of the contract, made in the name of her husband
for the construction of the house on her lot, procured the equi-
table title by a deed or declaration of trust, duly recorded No-
vember 26, 1894, the fact that her husband made a contract in
his own name, for the construction of a residence on the lot,
and made large payments on account of the contract price out
of his own funds, makes him alone liable, and that only such
claims as are admitted to be chargeable to the estate of Agnes
T. Brumbaugh, should share in the distribution.   The auditor
cannot accept this construction of the law.   It is admitted as
stated in the finding of facts that the house was constructed
upon the lot belonging to his wife, with her full knowledge,
approbation and consent.

It is a fact as clearly established that she joined in mortgage after mortgage upon her property, the proceeds of which were at least largely paid to the contractor, and subcontractors upon the building.    It is true that with the exception of the testimony of H. Q. Walker, Esq., the attorney for S. G. Purvis & Co., there seems to have been no express promise by Agnes T. Brumbaugh to pay any of the claims.    But all of the claims are admitted to be correct in amount, some are admitted to be chargeable to the estate by reason of the fact that she personally ordered the same, but it seems to the auditor that this alone would not be sufficient to make her liable.    Primarily it is the duty of the husband to provide a home for his wife and necessaries for the family, but it is not less the duty of the wife to provide these where she has separate estate, and her husband is insolvent.    It is true that Mrs. Brumbaugh and her husband may have had an express and distinct understanding in the beginning, that she was to furnish the lot, and he to erect thereon at his own separate cost and expense their home, and that discovering his inability to complete the residence projected by him, she mortgaged her property, with the improvement erected upon it to almost its full value, in a vain effort to save the honor and credit of her husband, but such testimony is not before the auditor, and if it were, unless such agreement and understanding had been fully disclosed and made known to those who furnished material and did the work upon the fine residence constructed, the auditor cannot see how the rights of claimants could thereby be affected.

As stated in the opinion above cited, the auditor believes and concludes that the law under the circumstances of this case makes Dr. Brumbaugh in all that he did the agent of his wife. Under the act of 1893, the wife certainly had power to appoint an agent to manage and improve her estate, and while she may not in the beginning have contemplated Dr. Brumbaugh to act as her agent, yet it seems to the auditor that the payment on account of various claimants, the promise to pay others, and the directions which she gave as to how the work should be done, the ordering of certain work and goods in carrying out the contract, is certainly sufficient to ratify his constructive agency, if not in the beginning authorized.    But S. G. Purvis & Co., who filed the mechanic's lien, certainly had no right higher than the

other material men or subcontractor doing work and furnishing material upon the building, and they cannot take the advantage of his constructive agency, or his agency made by the law without taking with it the contract in its entirety, and certainly under the contract they clearly waive their right to file any lien.   It is not sufficient for them to say that they had no actual notice of the waiver contained in the contract.   Under the law as it then existed, they were bound with constructive notice, and that which they did not investigate, they did at their own risk.

The contention of S. G. Purvis & Co., that it was the duty of the owners to file the contract in conformity to the act of June 26, 1895, P. L. 369, and having failed to do so, the agreement that no liens should be filed is no defense after the said ten days, has no merits in it.   The contract with S. G. Purvis & Co. had been made some four months prior to the passage of the act, and the rights of the parties were established as of the date when the original contract was made.

The act of June 26, 1895, requires that the contract shall be filed within ten days after its date, and before the principal contractor shall have been ordered to proceed with the work, and if by any stretch of the imagination, this act passed months after both the principal contract and the subcontract had been let could be made to apply to, or affect the rights of parties to such contract, it would be clearly unconstitutional and void.

4. The auditor is of the opinion that the Duquesne National Bank, having discharged the claim of McGinnis & Herlehy, by the discount, for McGinnis & Herlehy, of the note of Dr. S. O. Brumbaugh, given by him to pay the balance due them for plumbing, is both legally and equitably entitled to the amount of their claim, in preference to Bailey, Farrell & Co., who claim the same by reason of their attachment execution.   The Duquesne National Bank paid and discharged the claim and thereby to the mind of the auditor obtained an equitable assignment of it, and should be subrogated to the rights of McGinnis & Herlehy in the distribution, which they would have had had not the claim been paid by the discount of the note by the bank. The bank paid the money, McGinnis & Herlehy became and are insolvent, and no part of the money due the bank on the note by them paid has been returned to the bank by either

McGinnis & Herlehy or any one else.   This all transpired in
July, 1896, and the attachment execution was not served until
some months afterwards.

| The total fund for distribution amounted to | $16,676.25 |
| Amount of liens and preferred claims | 15,571.62 |
| Leaving a balance for distribution of | $1,104.63 |

which admitted a dividend of twenty-five per cent to be dis-
tributed among the nonlien creditors, among whom S. G. Pur-
vis & Co. had presented a claim for millwork for $1,242.64
on which a dividend was awarded of $310.66.   A mechanic's
lien had been filed for this case which would have had priority
to the mortgages had the mechanics' liens been sustained.

The court below dismissed the exceptions to the auditor's
report and S. G. Purvis & Co. appealed.

*Errors assigned* among others were (1–3) alleging error in
the auditor's not finding fraud in the contract of S. O. Brum-
baugh and in not finding that the use of the word " owner" by
the said S. O. Brumbaugh in the building contract was mis-
leading and fraudulent as regards the contractor and subcon-
tractors.   (4) In overruling appellant's fifth exception to the
auditor's report, said exception being as follows : " The audi-
tor erred in his third conclusion of law," which finding excepted
to is as follows : " The auditor is clearly of the opinion from the
facts above set forth and the testimony adduced, that the con-
tractor and all subcontractors are entitled to share in the dis-
tribution, their dividend to be prorated with their respective
claims."   (5) In holding that Dr. Brumbaugh, as agent for his
wife, bound her personally.   (6) In finding that under the
building contract the right to file a mechanic's lien had been
waived.   (9) In allowing the claim of McGinnis & Herlehy
for use of Duquesne National Bank.   (10) In allowing the
claim of B. K. Waughter before the claim of Purvis & Co. was
paid in full.   (12) In allowing the claim of William Ender,
there being no liability on the part of Mrs. Brumbaugh, as
shown by the evidence.   (13, 14) In allowing the claims of
Householder & Jones and Rasner & Dinker.   (21) In overruling
appellant's thirty-sixth exception to the auditor's report, said
exception being as follows : " The auditor erred in not finding,

as requested by exceptants, that under all the facts relating to the making of the contract between Dr. Brumbaugh and the contractor, Waughter, and to the performance of it on the part of Dr. Brumbaugh, the agreement of the contractor that no lien should be filed is not binding upon S. G. Purvis & Co., and is no defense to their lien."

*T. C. Campbell*, with him *H. Q. Walker*, for appellants. — The lien of the appellants, if it is allowed as of the date of filing it, May 13, 1866, would supplant the mortgage and judgment recorded June 18, 1896, and would be paid in full.

The agreement waiving the right to file liens was made by the contractor, but it is contended that it is inoperative for three reasons: 1. It was made upon the strength of a false representation by Dr. Brumbaugh, that he was the owner. 2. As to the appellant, the contractor was the agent for the owner. 3. The contract to file no liens was dependent on the owner's contract to pay the subcontractors eighty per cent as the work progressed, leaving but twenty per cent to pay upon final settlement, and the owner's failure to pay the eighty per cent, avoided the contract waiving the right to file liens.

Under the contract with the husband the material being furnished for the improvements of the wife's land with her knowledge and approbation, the contractors have a right to file a lien against her land and make her a party defendant: Bodey v. Thackara, 143 Pa. 171; Bevan v. Thackara, 143 Pa. 182; Jobe v. Hunter, 165 Pa. 5.

The contract having been made and carried on in bad faith, being misleading and defrauding, subcontractors and material men, should be held invalid because of the fraud: Ballman v. Heron, 160 Pa. 377.

The report of the auditor on the question of fraud, being an inference merely from undisputed facts, is not entitled to a controlling influence: Sweatman's Appeal, 150 Pa. 369.

Even where there is no fraud, but "where certain facts assumed by both parties are the basis of a contract, and it subsequently appears such facts do not exist, the contract is inoperative:" Riegel v. Ins. Co., 153 Pa. 134; Fink v. Smith, 170 Pa. 124; Goettel v. Sage, 117 Pa. 298.

A misrepresentation, which possibly might not be sufficient

ground of an action for damages, may be sufficient to entitle the party deceived to rescind the contract or to defeat it, or to defend pro tanto, an action upon it: Lake v. Weber, 6 Pa. Superior Ct. 42; Sutton v. Morgan, 158 Pa. 204.

No man can complain that another has relied too implicitly on the truth of what he himself stated: Land & Imp. Co. v. Mendenhall, 4 Pa. Superior Ct. 398; Lake v. Weber, 6 Pa. Superior Ct. 42.

The covenants were mutual and independent: McCrelish v. Churchman, 4 Rawle, 26; Com. Title Ins. Co. v. Ellis, 5 Dist. Rep. 33; Cassell v. Cooke, 8 S. & R. 268.

The eleventh assignment of error is based upon a principle of distribution so well known that no citation of authority is needed to enforce it. Waughter is liable to Purvis & Co. for the amount of their bill of work done on the house. The owner is liable to Waughter for his bill as well as for that of Purvis & Co. Why should Waughter realize anything out of the sale of the house until Purvis & Co. are paid? Upon distribution a prior judgment creditor will be postponed in favor of a later judgment where the first creditor is liable to the last for his debt: Vierheller's Appeal, 24. Pa. 105.

The twelfth assignment of error is to allowance of claim of Wm. Ender. This claim was for groceries furnished and was against Dr. Brumbaugh alone.

*J. M. Stoner*, for appellee, submitted no paper-book.

Opinion by Rice, P. J., October 10, 1898:

The appellants who had furnished materials for the building erected on the land by the sale of which, under an assignment for the benefit of creditors, the fund for distribution was created, had filed their mechanic's lien therefor, and claimed to be lien creditors as of May 13, 1896, the date of filing. The effect of the allowance of this claim in full would have been to supplant a mortgage in favor of another party, recorded June 18, 1896. The claim was disallowed by the auditor and the court below, because the contractor for the building had, for himself and subcontractors, waived the right to file liens.

No question is, or can be, raised as to the sufficiency of the waiver as expressed in the contract, but the appellants sought

to avoid its effect upon three grounds, which we state in the language of their counsel.

" 1. It was fraudulently obtained from the contractor.

" 2. The contractor for the building was not a contractor so far as appellants were concerned, but as to them, occupied the position of an agent for the owner, and the waiver of right to file liens, being secret, could not affect appellants.

" 3. The owner had agreed to pay the subcontractors eighty per cent as they furnished their materials and the agreement waiving the right to file liens was dependent upon the performance of the owner's contract so to pay. He failed therein and the contract of waiver was therefore inoperative."

1. The facts pertinent to the first proposition are, that the land was bought with money furnished by Agnes T. Harley, but for some unexplained reason the title was taken in the name of Dr. S. O. Brumbaugh, who executed to her a declaration of ·trust, which was put on record in November, 1894; subsequently these parties married; and a few days later (January 7, 1895) Dr. Brumbaugh entered into a contract with one B. K. Waughter for the erection of the house, in which the latter covenanted for himself and subcontractors that no liens should be filed. It is claimed that he so covenanted under the belief, and upon the faith of the representation, that Dr. Brumbaugh owned the property. The only ground he had for this belief was, that in the typewritten paper prepared for their signatures the parties were described as " B. K. Waughter, contractor and builder, party of the first part (hereinafter designated the contractor) and Dr. S. Oscar Brumbaugh (hereinafter designated the owner) party of the second part," and that in subsequent portions of the instrument the word " owner " was used instead of the ordinary legal verbiage. No representations whatever were made as to the nature of his title; nor was any inquiry made concerning it. Nothing appears to have been said upon the subject, and the record of the declaration of trust was constructive notice to all the world. If Dr. Brumbaugh had done or said anything to lead the contractor to omit to search the records the case might be different. But he did nothing of the kind, and the auditor's finding that there was no intention on his part to mislead or deceive any one was fully warranted. It is true the honesty of his intentions might not excuse, if he

recklessly asserted as true what he ought to have known was false. But that is not this case. In a restricted sense he was an " owner "—not the sole and beneficial owner it is true—but an owner. See Schott v. Harvey, 105 Pa. 222, 228. And it is a significant fact that the appellants aver in their mechanics' lien that " the name of the owner or reputed owner is S. Oscar Brumbaugh, trustee for Agnes T. Brumbaugh, formerly Agnes T. Harley," thus showing by their own confession that the use of the word " owner " for convenience of designation of the second party to the contract was not wholly inappropriate. When it is remembered further, that they knew nothing of the terms employed in the contract to designate the parties, and made no inquiries as to the ownership of the property, it is plain that they, at any rate, were not misled. We put our decision, however, upon the broader ground that the mere use of the word " owner " in the manner above described was not, without more, such a fraudulent misrepresentation as would debar Mrs. Brumbaugh or her lien creditors from insisting on the covenant against liens, either as against the contractor or the subcontractor.

It is well-settled, that where under a contract with the husband, and in his name, materials are furnished for the improvement of the wife's land, and the land is so improved with her knowledge, approbation and consent, the contractors have a right to file a lien against her land and make her a party defendant: Bodey v. Thackara, 143 Pa. 171 ; Bevan v. Thackara, 143 Pa. 182 ; Jobe v. Hunter, 165 Pa. 5. This principle, however, is subject to the qualification that " there was no agreement that her property should not be liable therefor : " Einstein v. Jamison, 95 Pa. 403. In the present case, the wife must be presumed to have assented to the improvement of her estate upon the terms expressed in the contract, among which was the covenant that no liens should be filed. Having put her deed on record, she had done all that the law required of her to give the world notice of her title. The facts of the case do not bring it within the principles upon which McCollum v. Messenger, 163 Pa. 603, Ballman v. Heron, 160 Pa. 377, and Ballman v. Heron, 169 Pa. 510, were decided.

2. The second proposition is inconsistent with the averments of the lien as the above quoted clause has shown. It is also

inconsistent with the actual facts of the case. Waughter was
clearly a "contractor" within the meaning of the mechanic's
lien laws and not a mere agent of Dr. Brumbaugh or his wife.
He had authority to bind the subcontractors by a covenant
against liens, notwithstanding the stipulations of the contract
that he should "file with the owner a list containing the names
and amounts of the respective bids of all sub-contractors and
material-men before any payments are made;" that such sub-
contractors should be "paid on orders issued by the party of
the first part . . . . and presented to the owner for payment;"
and that the amount paid should not "at any time exceed
eighty per cent of the value of the work done and the materials
furnished." None of the cases called to our attention is au-
thority for the proposition that such stipulations as to the mode
of payment affect the covenant under consideration as related
to subcontractors. They are chargeable with notice of the
covenant, and the principle that a third party is not affected
with notice of secret directions given by the principal to a gen-
eral agent is not applicable.

3. In Long v. Caffrey, 93 Pa. 526, it appeared, that the con-
tract price was to be paid in instalments as the work progressed,
and that the owner covenanted to insure the building for $1,000
and assign the policy to the contractor as collateral security for
the payment of the last instalment. The trial court was asked
to instruct the jury: "That if the jury believe that said Caffrey
failed to pay at the time agreed upon and also failed to insure
the property as agreed upon, then he cannot set up the defense
that the contractor agreed not to file a lien." The refusal of
this point was assigned for error, and it was urged with much
earnestness, that the covenants were dependent, the counsel cit-
ing McCrelish v. Churchman, 4 R. 26, and Wright v. Smyth,
4 W. & S. 527, in support of their position. The Supreme
Court overruled the assignment and said: "The different parts
of the contract are separate and independent covenants, and we
see no reason why the one not to file a lien shall not be enforced."
We are of opinion that this ruling governs in the present case
and renders further discussion of the appellant's third proposi-
tion unnecessary.

4. Under the facts found by the auditor, and recapitulated in
his third conclusion of law, the claims referred to in the fourth,

fifth, ninth, tenth, thirteenth and fourteenth assignments of error were entitled to participate in the pro rata distribution upon the ground that the work and materials were done and furnished either upon the personal order of Mrs. Brumbaugh or that of her husband acting as her agent. We cannot add anything profitably to what the auditor has said upon this subject, and overrule these assignments for the reasons given by him in his third conclusion of law. See Jobe v. Hunter, 165 Pa. 5.

5. The claim referred to in the eleventh assignment of error was for labor and carpenter work done on the house, and stands on the same plane as that of the appellants, which was for millwork. The equity of the assignee who in good faith paid this claim is equal to that of the appellants, and we see no good reason for giving the latter a preference in the distribution.

6. The claim referred to in the twelfth assignment of error was for groceries and provisions. The only evidence adduced relating to it shows, that it was a personal debt of Dr. Brumbaugh. This assignment must be sustained.

The twelfth assignment of error is sustained and the claim of William Ender is disallowed. All the other assignments of error are overruled, and subject to the above modification, the decree is affirmed and the record is remitted to the court below with directions to carry the same into effect. It is further ordered that one half of the costs of this appeal be paid out of the fund for distribution and the other half by the appellants.